TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00527-CR






Marshall Moreno, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. 3013571, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Marshall Moreno appeals his conviction for aggravated sexual assault of a child,
indecency with a child by contact, and indecency with a child by exposure. See Tex. Pen. Code Ann.
§ 22.021(a)(1)(B) (West Supp. 2004-05), § 21.11(a)(1), (a)(2) (West 2003). A jury found appellant
guilty of all three offenses and assessed separate punishments for each offense: confinement in the
Texas Department of Criminal Justice-Institutional Division for thirty-six years and a fine of $10,000
for aggravated sexual assault, twelve years and a fine of $3,000 for indecency with a child by contact,
and six years and a fine of $2000 for indecency with a child by exposure. In his first point of error,
appellant claims that the trial court denied him his constitutional right to confront the witnesses by
allowing the victim, A.M., and her brother, S.M., to testify by closed circuit equipment. In his
second point of error, appellant claims the trial court erred in admitting the testimony of two outcry
witnesses. We affirm the trial court's judgment.


Background



 A.M. and S.M. are appellant's biological children. A.M. was the victim of appellant's
alleged sexual abuse. A.M. and S.M. testified through closed circuit equipment in the presence of
counsel from both sides and the judge. The jury and appellant could observe the children from a
television in the courtroom, but the children could not see appellant. Appellant and his counsel were
able to contact each other through the bailiff. Both A.M. and S.M. were cross-examined.

 Around August 1999, after the mother's reports of family violence, A.M. and S.M.
moved to their maternal grandmother's home. John Howard, former attorney ad litem for both
children, testified that the children had seen appellant at their grandmother's house and at their
school. School officials also reported seeing appellant near the school in violation of a protective
order. According to Howard, the children were witnesses to appellant's "terrible abuse" of their
mother. Howard testified that in 1999, the children were suffering from the abuse and violence in
their previous home. They were wetting the bed and behaving violently toward the grandmother.

 Michele Chandler, a psychotherapist, worked with the children from August 1999
until January 2000. The children were potential witnesses against their father in a 1999 family
violence case, but were not called. (1) Chandler and Howard had recommended that they not testify
in that case. In July 2001, the children were moved to a foster home. Laura Johnson, a licensed
professional counselor, began working with A.M. and S.M. to address their therapeutic needs in
preparation for adoption. Johnson stopped seeing the children in November 2001. She resumed
seeing A.M. and S.M. in October 2002 and observed their positive emotional and behavioral
progress. She started seeing A.M. weekly in anticipation of the trial. Chandler, Johnson, and
Howard testified in a pre-trial hearing in support of the State's motion that A.M. and S.M. be
allowed to testify by closed circuit television outside appellant's presence.


Discussion



 Appellant's first issue concerns whether the trial court erred by allowing A.M. and
S.M. to testify outside the defendant's presence. The Confrontation Clause of the United States and
Texas Constitutions requires us to evaluate whether an important state interest is involved and
whether sufficient necessity for the procedure has been demonstrated. See U.S. Const. amend. VI;
Tex. Const. art. I, § 10; Maryland v. Craig, 497 U.S. 836, 852 (1990); Gonzales v. State, 818 S.W.2d
756, 761-63 (Tex. Crim. App. 1991).


Confrontation Clause


 The issue of whether closed circuit testimony against a defendant by a child victim
of abuse is permissible was first addressed by the Supreme Court in Maryland v. Craig, and then
decided under the Texas Constitution in Gonzales v. State. Craig, 497 U.S. at 836; Gonzales, 818
S.W.2d at 756.

 The constitutional right embodied in the Sixth Amendment is a right to face-to-face
confrontation. Coy v. Iowa, 487 U.S. 1012, 1016 (1988); Gonzales, 818 S.W.2d at 762. The
Supreme Court held that even though face-to-face confrontation was the core of the Sixth
Amendment, a defendant's right may be satisfied by something less than "physical, face-to-face
confrontation at trial only where denial of such confrontation is necessary to further an important
public policy and only where the reliability of the testimony is otherwise assured." Craig, 497 U.S.
at 850. The Confrontation Clause requires "rigorous adversarial testing" to secure the reliability of
evidence. Id. at 846. 

 In Craig, the Supreme Court defined the test for finding a necessity that a child testify
outside the presence of the defendant. Id. at 855. The Court stated that it must be a case-specific
finding. Id. "The trial court must also find that the child witness would be traumatized, not by the
courtroom generally, but by the presence of the defendant." Id. at 856. "Finally the trial court must
find that the emotional distress suffered by the child witness in the presence of the defendant is more
than de minimis, i.e., more than 'mere nervousness or excitement or some reluctance to testify.'" 
Id. (quoting Wildermuth v. State, 530 A.2d 275, 289 (Md. 1987)). 

 In Gonzales, the Texas Court of Criminal Appeals declined to define the scope of the
Confrontation Clause under the Texas Constitution more broadly than under the United States
Constitution. 818 S.W.2d at 763-64. Instead, it concluded that since there was cross-examination
of the child witness, that "there was compliance with Article I, section 10 of the Texas Constitution."
Id. at 762. The court chose to use "the same analysis applied in Craig to determine if the State
constitution has been violated." Id. at 764.

Application to A.M.


 A.M. was born on July 14, 1991. A.M. was seven or eight at the time of the alleged
abuse. She was eight years old when she moved out of the home of appellant and her mother and
made the first outcry concerning her abuse. She was twelve years old at the time of the trial.

 In September, 2001, an incident happened in the foster home in which A.M. and
another child in the home were "sexually acting out." In a subsequent counseling session, Johnson
asked A.M. if she had been sexually abused by anyone. A.M. told Johnson she had been abused by
appellant on one occasion. A.M. told Johnson that her father got on top of her and put his penis
inside her. 

 Appellant does not dispute that the protection of children from trauma is an important
public policy. See Gonzales, 818 S.W.2d at 762. Nor does appellant complain that the procedure
for closed circuit testimony under Texas Code of Criminal Procedure article 38.071 fails to 
adequately safeguard the reliability of such testimony through rigorous adversarial testing. See Tex.
Code Crim. Proc. Ann. art. 38.071, §§ 1, 3 (West Supp. 2004-05); Craig, 497 U.S. at 846. The
Texas procedure provides for a child under thirteen to testify "in a room other than the courtroom
and be televised by closed circuit equipment" and includes provisions for cross examination and
contact between counsel and the defendant. Art. 38.071, § 3(a). The appellant does not contest that
A.M. is younger than thirteen or assert that the trial court's procedures did not comply with article
38.071, section 3(a). Appellant contests only the adequacy of the showing of necessity in this case. 
Appellant claims the level of trauma suffered by A.M. was not more than de minimus as set out in
Craig and Gonzales. Craig, 497 U.S. at 856; Gonzales, 818 S.W.2d at 762.

 Three witnesses testified at the pretrial hearing regarding A.M.'s fear of appellant and
her general inability to talk about difficult issues. Michele Chandler described A.M. as a very quiet
girl. A.M. did not tell Chandler about any sexual abuse. Chandler said A.M. was "very, very, very
afraid of her father. And under no circumstances, did she want there to be contact." Chandler said
that at the time she was working with A.M., the children reported seeing their father near their home
and were fearful. Chandler said that A.M. met the criteria of suffering from post-traumatic stress
syndrome. Chandler feared that A.M. would have a "resurgence . . . of some anxiety and
difficulties" if forced to testify in the presence of her father about these issues. Even though
Chandler's observations were four years old, it would not be unreasonable for the court to give her
opinion some probative value.

 From her experience with A.M. starting in July 2001, Laura Johnson found A.M.
guarded and fearful of her biological father. A.M. responded to questions by being withdrawn and
quiet. Johnson diagnosed A.M. with a mild adjustment disorder. Johnson said that in her new home
in October 2001, A.M. was no longer having behavior problems, was doing well in school, and was
"much happier, a happy child who had stability and permanency in her life." Johnson testified that
after the attorney requested that she prepare A.M. to testify in court with regards to the sexual abuse,
A.M. "shut down." Johnson's trial testimony reiterated that approaching the trial, "[A.M.] switched
again to being like really quiet, not responding, almost like really unhappy . . . not sleeping well,
waking up, not eating." Johnson stated her fear in her pre-trial account that testifying before
appellant would be "damaging to [A.M.], given the progress that this child had made over time." 
Although Johnson testified that it would be "difficult" for A.M. to testify even out of the defendant's
presence, it would not be unreasonable for the court to credit her view that the risk to A.M. would
reach the level of trauma because of appellant's presence. In light of the counselor's specific
descriptions of A.M.'s behavioral changes and specific fears regarding the loss of the progress in
solving her behavioral problems achieved in her new, stable home, the court's finding of necessity
was well within the "zone of reasonable disagreement." See Jones, 944 S.W.2d at 651. 


Application to S.M.


 We next evaluate whether the trial court erred in allowing S.M. to testify by closed
circuit for the punishment stage of trial. Because S.M. was already thirteen years old and was not
testifying about a statutorily enumerated offense, the Texas statute authorizing closed circuit
testimony did not apply to S.M. (2) 

 The possibility that circumstances may exist in which a child witness outside of the
scope of article 38.071 may be permitted to testify outside the presence of the defendant was
addressed and answered by the Texas Court of Criminal Appeals in Gonzales. 818 S.W.2d at 762. 
In Gonzales, the child witness was not testifying as the victim of an offense enumerated under then
section 1 of article 38.071 of the Texas Code of Criminal Procedure, but rather as a witness to her
sister's murder. (3) She was also the complainant in an aggravated sexual assault case against the same
defendant. Gonzales, 818 S.W.2d at 758. S.M. similarly was a victim of physical abuse, but there
is no record of prosecution on his behalf. In a later case, the Texas Court of Criminal Appeals
decided that it was necessary for a particular thirteen-year-old victim of sexual abuse to testify by
two-way closed circuit television, and that doing so did not violate the defendant's right to
confrontation. Marx v. State, 987 S.W.2d 577, 581-83 (Tex. Crim. App. 1999) (thirteen-year-old
victim and six-year-old nonvictim witness allowed to testify through closed circuit). The court held
that article 38.071 did not "prohibit the use of special testimonial procedures in circumstances not
specified in section one." Id. at 582; see also Gonzales, 818 S.W.2d at 766. However, not all child
witnesses may testify outside the presence of the defendant. Coy, 487 U.S. 1016; Lowrey v. State,
757 S.W.2d 358, 359 (Tex. Crim. App. 1988). The pre-trial evidence in this case permits a
reasonable conclusion that S.M. was also a victim of appellant's abuse, and was within the scope of
an important state interest in protecting child victims of abuse from further trauma where necessary
for a child who would be otherwise unavailable to testify in the presence of the defendant. See Tex.
Code Crim. Proc. Ann. art. 38.071, § 1.

 The court's analysis of the necessity element must be specific to S.M. See Craig, 497
U.S. at 855; Gonzales, 818 S.W.2d at 762. The record supports the trial court's conclusion that S.M.
had been the victim of extensive physical abuse by his father according to both Chandler and S.M.'s 
testimony. Chandler and Johnson described S.M. as very angry and afraid of his father. Chandler
said simply being face-to-face or in the same room with his father would be traumatic to S.M. She
testified that his anger and fear had been "stirred up" as the trial approached. Chandler testified "that
kind of fear doesn't go away . . . and I don't believe that they would feel safe now." She testified
that "throughout their lives they may never feel safe in regards to their father." Chandler predicted
in the pre-trial hearing that if S.M. testified in front of appellant, she "expect[ed] to see a return of
some of the old behaviors on S.M.'s part." She found it "unrealistic to expect them to sit face to face
with a parent figure and be able to talk about the trauma and be able to talk honestly about their
feelings." Chandler clarified that she did not equate nervousness or excitement with trauma. It was
not unreasonable for the court to find that it would be traumatic for S.M. to testify face-to-face with
his father. See Craig, 497 U.S. at 855; Gonzales, 818 S.W.2d at 762. Based on the evidence
presented, it was not an abuse of discretion for the trial court to decide that the alternative closed
circuit procedure was necessary to prevent S.M. from reverting to his emotional problems of
aggressiveness and necessary for the witness to be available to testify honestly. We overrule
appellant's first point of error.


Multiple Outcry Witnesses


 In the second point of error we must evaluate the admission of testimony by a second
outcry witness, Alisa Clanin. Clanin testified after Laura Johnson had testified about A.M.'s first
outcry. We review the admission of testimony by an outcry witness under an abuse-of-discretion
standard. Garcia v. State, 792 S.W.2d 88, 91-92 (Tex. Crim. App. 1990); Hernandez v. State, 973
S.W.2d 787, 789 (Tex. App.--Austin 1998, pet. ref'd). If Clanin's testimony was improperly
admitted, we must decide if the error was reversible error in the context of all the evidence presented. 
Tex. R. App. P. 44.2(b); Gonzalez v. State, 117 S.W.3d 831, 840 (Tex. Crim. App. 2003).

 In October 2001, A.M. spoke with Alisa Clanin, a forensic interviewer with the
Children's Advocacy Center. Clanin testified that she asked A.M. if she had seen appellant's penis
and to describe it. A.M. identified a male doll's penis as the body part she saw during the assault. 
A.M. told Clanin that her hands were behind her during the assault and that she could not move. She
also told Clanin that appellant's body was moving up and down. Clanin testified that A.M. told her
that there was blood on the bed behind her and that her vagina hurt. When Clanin asked A.M. how
the assault had ended, A.M. said that her mom returned and "hit her dad with a broom or a stick to
get her dad off of her." A.M. told Clanin that the police were called and that her dad went to jail.

 Although A.M. testified at trial that she saw appellant's "peter," her word for his
penis, Johnson, the first outcry witness, did not testify about any report A.M. made to her about
seeing appellant's penis. Neither did she testify about the position of A.M. and the appellant during
the assault. Johnson had, however, testified that A.M. told her about the blood on the sheets after
the incident. 

 Out-of-court hearsay testimony is admissible from the first adult to whom a child
makes a discernible outcry regarding sexual or physical abuse. Tex. Code Crim. Proc. Ann. art.
38.072, § 2(a)(2) (West Supp. 2004-05); In re Z.L.B., 102 S.W.3d 120, 121 (Tex. 2003); Hernandez
v. State, 973 S.W.2d 787, 789 (Tex. App.--Austin 1998, pet. ref'd). The outcry exception to the
hearsay rule communicates both a preference for adult testimony and a precaution against testimony
of later outcries that have been influenced by "suggestion or guidance." Hernandez, 973 S.W.2d at
789. The exception permits testimony of multiple outcries if they regard "discrete occurrences" or
"discrete events" of abuse. (4) Id. (different times and locations of abuse); Turner v. State, 924 S.W.2d
180, 183 (Tex. App.--Eastland 1996, pet. ref'd) (officer could testify to victim's outcry about penile
penetration because victim's previous outcry to counselor was only about digital penetration;
indictment alleged penile penetration); see also Divine v. State, 122 S.W.3d 414, 419-20 (Tex.
App.--Texarkana 2003, pet. ref'd); Josey v. State, 97 S.W.3d 687, 693 (Tex. App.--Texarkana
2003, no pet.). Outcry witnesses are event-specific. Broderick v. State, 35 S.W.3d 67, 73-74 (Tex.
App.--Texarkana 2000, pet. ref'd). Clanin's testimony was admissible if it described a discrete
occurrence of abuse that was not described by A.M.'s outcry to Johnson. See Hernandez, 973
S.W.2d at 789.

 Appellant contends, however, that the "separate and discrete" test was not met
because the second outcry to Clanin described the same event as the outcry to Johnson. The State
responds that the second outcry was admissible because element of exposure was particular to
A.M.'s outcry to Clanin and necessary to prove a different offense, indecency by exposure. The
record, however, contains no evidence that A.M.'s "seeing" the penis was a part of a separate course
of criminal conduct. Johnson specifically testified at trial that A.M. told her the abuse "happened
one time," and no evidence was presented to contradict this. Clanin asked A.M. if she had seen
appellant's penis in the context of the same incident of assault. Assuming that the mention of
exposure during the second outcry was only a more detailed account of the same incident, it was
inadmissible hearsay. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2) (West Supp. 2004-05). 
Since Johnson's testimony was a discernible account of the event made to an adult over eighteen
years old, it was the only admissible outcry statement. Id., Z.L.B., 102 S.W.3d at 121.

 The State argues that the second outcry was also admitted without objection as a prior
consistent statement of A.M. However, the State did not confine its presentation of Clanin's
testimony to consistent reports of the incident. Through Clanin's testimony, the State introduced
details not presented by A.M. or Johnson, the outcry witness, including a description of A.M.'s
position and appellant's movement. The State presented Clanin's testimony to prove the truth of the
matter asserted by A.M., that she was exposed to the appellant's penis, and to present details neither
included in A.M.'s own testimony nor in Johnson's testimony. Tex. R. Evid. 801(d), 802.

 If the admission of Clanin's outcry testimony did not influence the jury or had only
slight effect it is harmless, not reversible error, and the conviction stands. Tex. R. App. § 44.2(b);
Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Johnson's and A.M.'s own testimony
present evidence of appellant's same conduct from which the jury could infer the elements of
exposure. Although the repetition of the exposure testimony was in error, its cumulative nature
made it harmless error. See Simpson v. State, 119 S.W.3d 262, 269 (Tex. Crim. App. 2003); Elder
v. State, 132 S.W.3d 20, 27 (Tex. App.--Fort Worth 2004, pet. ref'd). The facts of the two outcry
statements described the same event, the same conduct, and were not contradictory. Furthermore,
the impact of the details of Clanin's testimony on the jury were minimized by appellant's own
questions to A.M. mentioning those details. Before Clanin testified, the defense attempted to
impeach A.M. by saying she had told Johnson that she had told her mother of the abuse, but then
testified in court that Johnson was the first adult she told about the abuse. The record shows that
A.M. had only told Clanin that she had told her mother, not Johnson. The defense then introduced
in its questions other details that A.M. had told Clanin, but mistakenly cited them as having been
told to Johnson. The defense then asked A.M. if those were things she told Johnson, or if they were
true. For example, the defense mentions the mother beating the dad off with a broom or stick, and
questions if it was true. A.M. answered, "yeah." The defense also mentioned that A.M. said her
mother came home, saw her father, and called the police. These reports actually were made to
Clanin, not Johnson. The defense then asked A.M. if her testimony or what she told Laura Johnson
was true. A.M. answered, "what I told Laura." Because appellant's counsel had already introduced
these details in efforts to impeach A.M.'s credibility, it was harmless error for the court later to admit
Clanin's hearsay. See Cobb v. State, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002). Although the
details of appellant being on top of A.M., moving up and down, and A.M.'s confirmation that she
had seen appellant's penis, were not previously introduced, the record as a whole shows they would
have slight effect. We overrule appellant's second point of error.


Conclusion



 We affirm the trial court's order permitting the testimony by closed circuit. We
conclude that it was not unreasonable for the court to find a strong public interest in protecting child
victims of abuse from trauma. In light of that interest, the record supports the court's finding of a
necessity that the children testify by closed circuit technology. 

 The admission of the testimony of Alisa Clanin, a second outcry witness, was error
because it concerned the same event as the first outcry testimony. However, it was harmless error,
because the defense had "opened the door" to the use of Clanin's testimony in order to impeach
A.M.'s credibility. 

 We affirm the trial court's judgment.



 __________________________________________

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear: Opinion by Chief Justice Law;

 Concurring Opinion by Justice Patterson


Affirmed


Filed: March 10, 2005


Do Not Publish
1. The record of pre-trial cross-examination suggests that in 1999 the mother pressed charges
of family violence assault against appellant.
2. The relevant text is:


This article applies only to a hearing or proceeding in which the court determines
that a child younger than 13 years of age would be unavailable to testify in the
presence of the defendant about an offense defined by any of the following
sections of the Penal Code: . . . (5) Section 21.11 (Indecency with a Child); . . .
(7) Section 22.021 (Aggravated Sexual Assault); . . . .


. . . .


[T]he court may order that the testimony of the child be taken in a room other
than the courtroom and be televised by closed circuit equipment in the courtroom
to be viewed by the court and the finder of fact. Tex. Code Crim. Proc. Ann. art.
38.071, § 1.
3. Act of May 6, 1987, 70th Leg., 2d C.S., ch. 55, § 1, 1987 Tex. Gen. Laws 180, amended
by Act of May 26, 2001, 77th Leg., R.S., ch. 338, § 1, 2001 Tex. Gen. Laws 615 (adding murder as 
offense to which child witness can testify by closed circuit).
4. The events must concern an offense alleged in the indictment or an extraneous offense
problem may be presented. In this case, appellant was charged with separate counts and the outcries
related to an offense charged.