# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00527-CR

**Marshall Moreno, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3013571, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Marshall Moreno appeals his conviction for aggravated sexual assault of a child, indecency with a child by contact, and indecency with a child by exposure. *See* Tex. Pen. Code Ann. § 22.021(a)(1)(B) (West Supp. 2004-05), § 21.11(a)(1), (a)(2) (West 2003). A jury found appellant guilty of all three offenses and assessed separate punishments for each offense: confinement in the Texas Department of Criminal Justice-Institutional Division for thirty-six years and a fine of $10,000 for aggravated sexual assault, twelve years and a fine of $3,000 for indecency with a child by contact, and six years and a fine of $2000 for indecency with a child by exposure. In his first point of error, appellant claims that the trial court denied him his constitutional right to confront the witnesses by

allowing the victim, A.M., and her brother, S.M., to testify by closed circuit equipment. In his second point of error, appellant claims the trial court erred in admitting the testimony of two outcry witnesses. We affirm the trial court's judgment.

**Background**

A.M. and S.M. are appellant's biological children. A.M. was the victim of appellant's alleged sexual abuse. A.M. and S.M. testified through closed circuit equipment in the presence of counsel from both sides and the judge. The jury and appellant could observe the children from a television in the courtroom, but the children could not see appellant. Appellant and his counsel were able to contact each other through the bailiff. Both A.M. and S.M. were cross-examined.

Around August 1999, after the mother's reports of family violence, A.M. and S.M. moved to their maternal grandmother's home. John Howard, former attorney ad litem for both children, testified that the children had seen appellant at their grandmother's house and at their school. School officials also reported seeing appellant near the school in violation of a protective order. According to Howard, the children were witnesses to appellant's "terrible abuse" of their mother. Howard testified that in 1999, the children were suffering from the abuse and violence in their previous home. They were wetting the bed and behaving violently toward the grandmother.

Michele Chandler, a psychotherapist, worked with the children from August 1999 until January 2000. The children were potential witnesses against their father in a 1999 family violence case, but were not called.[1] Chandler and Howard had recommended that they not testify

---

[1] The record of pre-trial cross-examination suggests that in 1999 the mother pressed charges of family violence assault against appellant.

2

in that case. In July 2001, the children were moved to a foster home. Laura Johnson, a licensed professional counselor, began working with A.M. and S.M. to address their therapeutic needs in preparation for adoption. Johnson stopped seeing the children in November 2001. She resumed seeing A.M. and S.M. in October 2002 and observed their positive emotional and behavioral progress. She started seeing A.M. weekly in anticipation of the trial. Chandler, Johnson, and Howard testified in a pre-trial hearing in support of the State's motion that A.M. and S.M. be allowed to testify by closed circuit television outside appellant's presence.

**Discussion**

Appellant's first issue concerns whether the trial court erred by allowing A.M. and S.M. to testify outside the defendant's presence. The Confrontation Clause of the United States and Texas Constitutions requires us to evaluate whether an important state interest is involved and whether sufficient necessity for the procedure has been demonstrated. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *Maryland v. Craig*, 497 U.S. 836, 852 (1990); *Gonzales v. State*, 818 S.W.2d 756, 761-63 (Tex. Crim. App. 1991).

*Confrontation Clause*

The issue of whether closed circuit testimony against a defendant by a child victim of abuse is permissible was first addressed by the Supreme Court in *Maryland v. Craig*, and then decided under the Texas Constitution in *Gonzales v. State*. *Craig*, 497 U.S. at 836; *Gonzales*, 818 S.W.2d at 756.

3

The constitutional right embodied in the Sixth Amendment is a right to face-to-face confrontation. *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988); *Gonzales*, 818 S.W.2d at 762. The Supreme Court held that even though face-to-face confrontation was the core of the Sixth Amendment, a defendant's right may be satisfied by something less than "physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850. The Confrontation Clause requires "rigorous adversarial testing" to secure the reliability of evidence. *Id.* at 846.

In *Craig*, the Supreme Court defined the test for finding a necessity that a child testify outside the presence of the defendant. *Id*. at 855. The Court stated that it must be a case-specific finding. *Id.* "The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 856. "Finally the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.*, more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* (quoting *Wildermuth v. State*, 530 A.2d 275, 289 (Md. 1987)).

In *Gonzales*, the Texas Court of Criminal Appeals declined to define the scope of the Confrontation Clause under the Texas Constitution more broadly than under the United States Constitution. 818 S.W.2d at 763-64. Instead, it concluded that since there was cross-examination of the child witness, that "there was compliance with Article I, section 10 of the Texas Constitution." *Id.* at 762. The court chose to use "the same analysis applied in *Craig* to determine if the State constitution has been violated." *Id.* at 764.

4

***Application to A.M.***

A.M. was born on July 14, 1991. A.M. was seven or eight at the time of the alleged abuse. She was eight years old when she moved out of the home of appellant and her mother and made the first outcry concerning her abuse. She was twelve years old at the time of the trial.

In September, 2001, an incident happened in the foster home in which A.M. and another child in the home were "sexually acting out." In a subsequent counseling session, Johnson asked A.M. if she had been sexually abused by anyone. A.M. told Johnson she had been abused by appellant on one occasion. A.M. told Johnson that her father got on top of her and put his penis inside her.

Appellant does not dispute that the protection of children from trauma is an important public policy. *See Gonzales*, 818 S.W.2d at 762. Nor does appellant complain that the procedure for closed circuit testimony under Texas Code of Criminal Procedure article 38.071 fails to adequately safeguard the reliability of such testimony through rigorous adversarial testing. *See* Tex. Code Crim. Proc. Ann. art. 38.071, §§ 1, 3 (West Supp. 2004-05); *Craig*, 497 U.S. at 846. The Texas procedure provides for a child under thirteen to testify "in a room other than the courtroom and be televised by closed circuit equipment" and includes provisions for cross examination and contact between counsel and the defendant. Art. 38.071, § 3(a). The appellant does not contest that A.M. is younger than thirteen or assert that the trial court's procedures did not comply with article 38.071, section 3(a). Appellant contests only the adequacy of the showing of necessity in this case. Appellant claims the level of trauma suffered by A.M. was not more than *de minimus* as set out in *Craig* and *Gonzales*. *Craig*, 497 U.S. at 856; *Gonzales*, 818 S.W.2d at 762.

5

Three witnesses testified at the pretrial hearing regarding A.M.'s fear of appellant and her general inability to talk about difficult issues. Michele Chandler described A.M. as a very quiet girl. A.M. did not tell Chandler about any sexual abuse. Chandler said A.M. was "very, very, very afraid of her father. And under no circumstances, did she want there to be contact." Chandler said that at the time she was working with A.M., the children reported seeing their father near their home and were fearful. Chandler said that A.M. met the criteria of suffering from post-traumatic stress syndrome. Chandler feared that A.M. would have a "resurgence . . . of some anxiety and difficulties" if forced to testify in the presence of her father about these issues. Even though Chandler's observations were four years old, it would not be unreasonable for the court to give her opinion some probative value.

From her experience with A.M. starting in July 2001, Laura Johnson found A.M. guarded and fearful of her biological father. A.M. responded to questions by being withdrawn and quiet. Johnson diagnosed A.M. with a mild adjustment disorder. Johnson said that in her new home in October 2001, A.M. was no longer having behavior problems, was doing well in school, and was "much happier, a happy child who had stability and permanency in her life." Johnson testified that after the attorney requested that she prepare A.M. to testify in court with regards to the sexual abuse, A.M. "shut down." Johnson's trial testimony reiterated that approaching the trial, "[A.M.] switched again to being like really quiet, not responding, almost like really unhappy . . . not sleeping well, waking up, not eating." Johnson stated her fear in her pre-trial account that testifying before appellant would be "damaging to [A.M.], given the progress that this child had made over time." Although Johnson testified that it would be "difficult" for A.M. to testify even out of the defendant's

presence, it would not be unreasonable for the court to credit her view that the risk to A.M. would

reach the level of trauma because of appellant's presence. In light of the counselor's *specific*

descriptions of A.M.'s behavioral changes and *specific* fears regarding the loss of the progress in

solving her behavioral problems achieved in her new, stable home, the court's finding of necessity

was well within the "zone of reasonable disagreement." *See Jones*, 944 S.W.2d at 651.

***Application to S.M.***

We next evaluate whether the trial court erred in allowing S.M. to testify by closed

circuit for the punishment stage of trial. Because S.M. was already thirteen years old and was not

testifying about a statutorily enumerated offense, the Texas statute authorizing closed circuit

testimony did not apply to S.M.[2]

The possibility that circumstances may exist in which a child witness outside of the

scope of article 38.071 may be permitted to testify outside the presence of the defendant was

---

[2] The relevant text is:

> This article applies only to a hearing or proceeding in which the court determines
> that a child younger than 13 years of age would be unavailable to testify in the
> presence of the defendant about an offense defined by any of the following
> sections of the Penal Code: . . . (5) Section 21.11 (Indecency with a Child); . . .
> (7) Section 22.021 (Aggravated Sexual Assault); . . . .
>
> . . . .
>
> [T]he court may order that the testimony of the child be taken in a room other
> than the courtroom and be televised by closed circuit equipment in the courtroom
> to be viewed by the court and the finder of fact. Tex. Code Crim. Proc. Ann. art.
> 38.071, § 1.

addressed and answered by the Texas Court of Criminal Appeals in *Gonzales*. 818 S.W.2d at 762.

In *Gonzales*, the child witness was not testifying as the victim of an offense enumerated under then

section 1 of article 38.071 of the Texas Code of Criminal Procedure, but rather as a witness to her

sister's murder.[3] She was also the complainant in an aggravated sexual assault case against the same

defendant. *Gonzales*, 818 S.W.2d at 758. S.M. similarly was a victim of physical abuse, but there

is no record of prosecution on his behalf. In a later case, the Texas Court of Criminal Appeals

decided that it was necessary for a particular thirteen-year-old victim of sexual abuse to testify by

two-way closed circuit television, and that doing so did not violate the defendant's right to

confrontation. *Marx v. State*, 987 S.W.2d 577, 581-83 (Tex. Crim. App. 1999) (thirteen-year-old

victim and six-year-old nonvictim witness allowed to testify through closed circuit). The court held

that article 38.071 did not "prohibit the use of special testimonial procedures in circumstances not

specified in section one." *Id.* at 582; *see also Gonzales*, 818 S.W.2d at 766. However, not all child

witnesses may testify outside the presence of the defendant. *Coy*, 487 U.S. 1016; *Lowrey v. State*,

757 S.W.2d 358, 359 (Tex. Crim. App. 1988). The pre-trial evidence in this case permits a

reasonable conclusion that S.M. was also a victim of appellant's abuse, and was within the scope of

an important state interest in protecting child victims of abuse from further trauma where necessary

for a child who would be otherwise unavailable to testify in the presence of the defendant. *See* Tex.

Code Crim. Proc. Ann. art. 38.071, § 1.

---

[3] Act of May 6, 1987, 70th Leg., 2d C.S., ch. 55, § 1, 1987 Tex. Gen. Laws 180, *amended by* Act of May 26, 2001, 77th Leg., R.S., ch. 338, § 1, 2001 Tex. Gen. Laws 615 (adding murder as offense to which child witness can testify by closed circuit).

The court's analysis of the necessity element must be specific to S.M. *See Craig*, 497 U.S. at 855; *Gonzales*, 818 S.W.2d at 762. The record supports the trial court's conclusion that S.M. had been the victim of extensive physical abuse by his father according to both Chandler and S.M.'s testimony. Chandler and Johnson described S.M. as very angry and afraid of his father. Chandler said simply being face-to-face or in the same room with his father would be traumatic to S.M. She testified that his anger and fear had been "stirred up" as the trial approached. Chandler testified "that kind of fear doesn't go away . . . and I don't believe that they would feel safe now." She testified that "throughout their lives they may never feel safe in regards to their father." Chandler predicted in the pre-trial hearing that if S.M. testified in front of appellant, she "expect[ed] to see a return of some of the old behaviors on S.M.'s part." She found it "unrealistic to expect them to sit face to face with a parent figure and be able to talk about the trauma and be able to talk honestly about their feelings." Chandler clarified that she did not equate nervousness or excitement with trauma. It was not unreasonable for the court to find that it would be traumatic for S.M. to testify face-to-face with his father. *See Craig*, 497 U.S. at 855; *Gonzales*, 818 S.W.2d at 762. Based on the evidence presented, it was not an abuse of discretion for the trial court to decide that the alternative closed circuit procedure was necessary to prevent S.M. from reverting to his emotional problems of aggressiveness and necessary for the witness to be available to testify honestly. We overrule appellant's first point of error.

### Multiple Outcry Witnesses

In the second point of error we must evaluate the admission of testimony by a second outcry witness, Alisa Clanin. Clanin testified after Laura Johnson had testified about A.M.'s first

9

outcry. We review the admission of testimony by an outcry witness under an abuse-of-discretion standard. *Garcia v. State*, 792 S.W.2d 88, 91-92 (Tex. Crim. App. 1990); *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). If Clanin's testimony was improperly admitted, we must decide if the error was reversible error in the context of all the evidence presented. Tex. R. App. P. 44.2(b); *Gonzalez v. State*, 117 S.W.3d 831, 840 (Tex. Crim. App. 2003).

In October 2001, A.M. spoke with Alisa Clanin, a forensic interviewer with the Children's Advocacy Center. Clanin testified that she asked A.M. if she had seen appellant's penis and to describe it. A.M. identified a male doll's penis as the body part she saw during the assault. A.M. told Clanin that her hands were behind her during the assault and that she could not move. She also told Clanin that appellant's body was moving up and down. Clanin testified that A.M. told her that there was blood on the bed behind her and that her vagina hurt. When Clanin asked A.M. how the assault had ended, A.M. said that her mom returned and "hit her dad with a broom or a stick to get her dad off of her." A.M. told Clanin that the police were called and that her dad went to jail.

Although A.M. testified at trial that she saw appellant's "peter," her word for his penis, Johnson, the first outcry witness, did not testify about any report A.M. made to her about seeing appellant's penis. Neither did she testify about the position of A.M. and the appellant during the assault. Johnson had, however, testified that A.M. told her about the blood on the sheets after the incident.

Out-of-court hearsay testimony is admissible from the first adult to whom a child makes a discernible outcry regarding sexual or physical abuse. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2) (West Supp. 2004-05); *In re Z.L.B.*, 102 S.W.3d 120, 121 (Tex. 2003)*; Hernandez*

*v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). The outcry exception to the hearsay rule communicates both a preference for adult testimony and a precaution against testimony of later outcries that have been influenced by "suggestion or guidance." *Hernandez*, 973 S.W.2d at 789. The exception permits testimony of multiple outcries if they regard "discrete occurrences" or "discrete events" of abuse.[4] *Id.* (different times and locations of abuse); *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (officer could testify to victim's outcry about penile penetration because victim's previous outcry to counselor was only about digital penetration; indictment alleged penile penetration); *see also Divine v. State*, 122 S.W.3d 414, 419-20 (Tex. App.—Texarkana 2003, pet. ref'd); *Josey v. State*, 97 S.W.3d 687, 693 (Tex. App.—Texarkana 2003, no pet.). Outcry witnesses are event-specific. *Broderick v. State*, 35 S.W.3d 67, 73-74 (Tex. App.—Texarkana 2000, pet. ref'd). Clanin's testimony was admissible if it described a discrete occurrence of abuse that was not described by A.M.'s outcry to Johnson. *See Hernandez*, 973 S.W.2d at 789.

Appellant contends, however, that the "separate and discrete" test was not met because the second outcry to Clanin described the same event as the outcry to Johnson. The State responds that the second outcry was admissible because element of exposure was particular to A.M.'s outcry to Clanin and necessary to prove a different offense, indecency by exposure. The record, however, contains no evidence that A.M.'s "seeing" the penis was a part of a separate course of criminal conduct. Johnson specifically testified at trial that A.M. told her the abuse "happened

---

[4] The events must concern an offense alleged in the indictment or an extraneous offense problem may be presented. In this case, appellant was charged with separate counts and the outcries related to an offense charged.

one time," and no evidence was presented to contradict this. Clanin asked A.M. if she had seen appellant's penis in the context of the same incident of assault. Assuming that the mention of exposure during the second outcry was only a more detailed account of the same incident, it was inadmissible hearsay. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(2) (West Supp. 2004-05). Since Johnson's testimony was a discernible account of the event made to an adult over eighteen years old, it was the only admissible outcry statement. *Id.*, *Z.L.B.*, 102 S.W.3d at 121.

The State argues that the second outcry was also admitted without objection as a prior consistent statement of A.M. However, the State did not confine its presentation of Clanin's testimony to consistent reports of the incident. Through Clanin's testimony, the State introduced details not presented by A.M. or Johnson, the outcry witness, including a description of A.M.'s position and appellant's movement. The State presented Clanin's testimony to prove the truth of the matter asserted by A.M., that she was exposed to the appellant's penis, and to present details neither included in A.M.'s own testimony nor in Johnson's testimony. Tex. R. Evid. 801(d), 802.

If the admission of Clanin's outcry testimony did not influence the jury or had only slight effect it is harmless, not reversible error, and the conviction stands. Tex. R. App. § 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Johnson's and A.M.'s own testimony present evidence of appellant's same conduct from which the jury could infer the elements of exposure. Although the repetition of the exposure testimony was in error, its cumulative nature made it harmless error. *See Simpson v. State*, 119 S.W.3d 262, 269 (Tex. Crim. App. 2003); *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref'd). The facts of the two outcry statements described the same event, the same conduct, and were not contradictory. Furthermore,

12

the impact of the details of Clanin's testimony on the jury were minimized by appellant's own questions to A.M. mentioning those details. Before Clanin testified, the defense attempted to impeach A.M. by saying she had told *Johnson* that she had told her mother of the abuse, but then testified in court that Johnson was the first adult she told about the abuse. The record shows that A.M. had only told *Clanin* that she had told her mother, not Johnson. The defense then introduced in its questions other details that A.M. had told *Clanin*, but mistakenly cited them as having been told to Johnson. The defense then asked A.M. if those were things she told Johnson, or if they were true. For example, the defense mentions the mother beating the dad off with a broom or stick, and questions if it was true. A.M. answered, "yeah." The defense also mentioned that A.M. said her mother came home, saw her father, and called the police. These reports actually were made to Clanin, not Johnson. The defense then asked A.M. if her testimony or what she told Laura Johnson was true. A.M. answered, "what I told Laura." Because appellant's counsel had already introduced these details in efforts to impeach A.M.'s credibility, it was harmless error for the court later to admit Clanin's hearsay. *See Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002). Although the details of appellant being on top of A.M., moving up and down, and A.M.'s confirmation that she had seen appellant's penis, were not previously introduced, the record as a whole shows they would have slight effect. We overrule appellant's second point of error.

## Conclusion

We affirm the trial court's order permitting the testimony by closed circuit. We conclude that it was not unreasonable for the court to find a strong public interest in protecting child

victims of abuse from trauma. In light of that interest, the record supports the court's finding of a necessity that the children testify by closed circuit technology.

The admission of the testimony of Alisa Clanin, a second outcry witness, was error because it concerned the same event as the first outcry testimony. However, it was harmless error, because the defense had "opened the door" to the use of Clanin's testimony in order to impeach A.M.'s credibility.

We affirm the trial court's judgment.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear: Opinion by Chief Justice Law; Concurring Opinion by Justice Patterson

Affirmed

Filed: March 10, 2005

Do Not Publish