**AFFIRMED; Opinion Filed December 17, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01427-CR

**CHARLES RAY GRAY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82047-2015**

## MEMORANDUM OPINION
Before Justices Myers, Evans, and Brown
Opinion by Justice Myers

A jury convicted appellant Charles Ray Gray of one count of continuous sexual abuse of a child and one count of aggravated sexual assault of a child. The jury assessed punishment at fifty years' imprisonment for each count along with a $10,000 fine for the aggravated sexual assault offense, with the sentences to run concurrently. In four issues, appellant argues the trial court erred in restricting his right to present a defense; the court erred in allowing the hearsay testimony of a non-outcry witness; the court erred in allowing the testimony of Dan Powers over objection; and that the evidence is insufficient to prove he committed the offenses. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

The victim, eighteen years old on the day she that she testified, told the jury that her mother died from cancer when she was five years old. After that, she lived with her father, appellant. She testified that she was about six years old when the abuse started. She was sitting on appellant's

lap on a couch in the living room, watching television, and appellant started touching and rubbing her vagina with his hand, beneath her underwear. The victim was not sure how long the touching lasted; she said it did not last "that long." She said that she "was just very confused" when the touching occurred because she was only six years old, but she felt "like something was not right" when it occurred. Appellant also touched the victim's vagina with his hand on other occasions; she was not sure how often this occurred. She noted that this touching became less frequent as she got older. Appellant also performed "oral sex" on the victim when she was six years old. The victim recalled that she was in appellant's bedroom, sitting on the bed, and that he pulled down her pants and started performing oral sex on her, putting his mouth and tongue on her vagina. When he finished, he put his penis in her face and said, "Okay. Now you do me." The victim refused. Appellant told her, "Your mother would do it."

When the victim was around nine or ten years old, appellant would go into her bedroom in the mornings before school, pull her pants down, and "put his penis in between [her] butt cheeks and, like, thrust." His sexual organ made contact with her anus when he did this, but it did not penetrate. The victim said this occurred multiple times. One night, the victim was sleeping on the couch in the living room when appellant came up behind her and tried to put her hand on his penis. She pulled her hand away, after which he put his penis up to her face and touched her lip with it. On another occasion, appellant approached the victim from behind while she was cleaning the toilet and grabbed her breast. The victim could not "really remember what happened in between," but recalled that they both "ended up in the guest bedroom," where appellant pulled down their pants and attempted to "put his penis in me." The victim resisted and appellant eventually abandoned the effort.

The victim testified that the last time appellant abused her was when she was thirteen years old, during the summer in between the seventh and eighth grades. She and appellant were in his

bedroom watching a television show, a movie, "or something like that." She fell asleep and appellant laid beside her and reached under her underwear, rubbing her vagina. The victim recalled that she did not do anything at first, but eventually got up and went to her room.

The evidence shows that the victim disclosed the fact that she had been abused in March of 2015, approximately two days before her sixteenth birthday. She posted something on a social media site indicating appellant was not feeding or taking care of her.

Child Protective Services (CPS) was contacted and Lindsey Baxter, an investigator with CPS, was assigned to the case. Baxter screened the victim at school. During the screening, Baxter ruled out any physical abuse and physical neglect, but the victim disclosed that appellant had performed "oral sex" on her when she was six years old, and touched her inappropriately until she was around twelve years of age. Based on that disclosure, Baxter transported the victim to the Collin County Children's Advocacy Center (CAC) for a forensic interview.

The victim testified that, leading up to her outcry, she and appellant "hadn't really spoken to each other in over a year." They had stopped communicating following an incident where she broke appellant's iPad by swatting it out of his hand, and he responded by breaking her iPod with a hammer.

Janeth Peterson forensically interviewed the victim on March 19, 2015, testifying that the victim told her the first incident occurred when she was six or seven years old. During that incident, the victim was sitting on appellant's lap while they were on the couch, and he touched the skin of her vagina. She recalled that appellant's penis was out of his pants during this incident. The victim also talked about how appellant would rub her vagina with his hand, and indicated this happened more than once. Regarding the oral sex allegation, Peterson testified that the victim told her that when she was around six years old, appellant put his mouth and tongue on her vagina at their house in Plano, and that this happened only once. The victim stated that appellant licked her

vagina with his tongue during this incident and that it "felt weird." The last incident occurred on the couch in the living room when she was thirteen years old, and appellant was laying behind the victim and touching her vagina on top of her clothes. The victim also described an incident where she was cleaning the bathroom toilet and appellant walked up behind her, grabbed her, and tried to penetrate her with his penis. They moved into appellant's bedroom where he tried to unbutton his pants, but the victim resisted "like freaking crazy," according to what she told Peterson, and appellant's penis did not actually touch her vagina. The victim told Peterson there were several occasions when she was around eight to ten years of age when appellant put his penis in between her "butt cheeks" and moved it back and forth, but there was no anal penetration. In addition, the victim told Peterson that appellant once tried to put her hand on his penis, and that this happened only once.

After the victim made her disclosure to Baxter, Baxter contacted Detective Justin Lawrence of the Plano Police Department. Lawrence observed the victim's forensic interview with Peterson from another room at the CAC. After the forensic interview, Lawrence contacted appellant and interviewed him at the CAC—an interview that was recorded and admitted into evidence. Lawrence thought appellant's answers during the interview "were very concerning." Although appellant denied the allegations, the detective noted that appellant did not "seem to give a lot of explanation" or "get angry," even when the detective told him that his daughter was accusing him of giving her oral sex and touching her vagina. Lawrence referred the victim for a medical examination, but testified that he did not expect the exam to reveal any trauma or forensic evidence due to the delay in outcry and the type of abuse the victim had disclosed. No evidence was presented regarding the results of any medical exam. Appellant was ultimately arrested for continuous sexual abuse of a child.

Appellant presented testimony from four witnesses: Rose Marie Chase, Dr. Michael

–4–

Gottlieb, Dr. Cristin Dooley, and Laura Gray. Rose Marie Chase was the mother of the victim's childhood friend. Chase obtained CPS approval for the victim to be placed with her family, and she lived in the Chase household for almost a year. Chase testified that she had known the victim for years because the victim and her daughter were close friends. Chase said she never saw any indication the victim was being physically abused, nor did the victim confide in her about sexual abuse of any kind. Chase recalled that the victim "told fibs," was manipulative, was not a reliably truthful person, and repeatedly threatened suicide. Chase acknowledged she had no experience in dealing with victims of sexual assault or abuse and that she had never dealt with someone who was suicidal because of the abuse they had suffered. Laura Gray, appellant's mother, described the circumstances of appellant's upbringing and his life with the victim's mother, testifying that appellant was very smart and loved to read but he preferred to be alone and "was more standoffish." She said the victim "was a hard child to love, to get affection from," and that she "just preferred to be by herself." Dr. Dooley, a licensed psychologist experienced in both therapy and testing, tested appellant at the request of the defense, concluding appellant suffered from a high-functioning form of autism and that he suffered no intellectual impairment but had social impairments. She said he would not be good at manipulating others. Dr. Gottlieb, a psychologist, testified that a high percentage of children will disclose abuse when directly asked, telling the jury that "the research says that in very, very high percentages when children are asked if they've been mistreated, they disclose." Additionally, he discussed the "attachment" process and that children who do not experience a healthy attachment process may have psychological problems as adults such as difficulty with emotions, interpersonal relationships, and conforming their behavior to societal norms. Appellant also testified in his defense, describing his relationship with the victim's mother and what he went through after her death from cancer. Appellant repeatedly denied sexually abusing his daughter.

The State called Dan Powers, the chief operating officer of the Collin County CAC, as a rebuttal witness. Powers testified in front of the jury that although some children immediately disclose abuse, it is more common for them not to do so. The age of the child and the dynamics of the relationship that the victim has with the offender could impact the child's ability to disclose what happened. A person cannot force a child to outcry if they are not ready to talk about the abuse. Forcing the child to talk about the abuse has the effect of "revictimizing them." Moreover, it is possible for a child to deny that sexual abuse occurred and later say it did happen, but most victims of sexual abuse in the United States do not report it and "carry that to their grave." Some of the reasons why a child may deny sexual abuse include that the child does not feel safe enough to talk about it; the child does not feel the question is asked in the right way; or the child is not ready for or aware that someone is going to ask about the abuse. Additionally, not all children react the same way when disclosing abuse, and a child may react differently to disclosing abuse in different settings.

The jury ultimately convicted appellant of continuous sexual abuse of a child and aggravated sexual assault of a child, as charged in the indictment. It assessed punishment at fifty years' imprisonment for each count, along with a $10,000 fine for the aggravated sexual assault of a child offense. This appeal followed.

DISCUSSION

## I. The Right to Present a Defense

In his first issue, appellant contends the trial court improperly restricted his right to present a defense by excluding video of a 2009 forensic interview that the victim gave at the CAC.

An abuse of discretion standard applies when the right to present a complete defense is implicated. *See Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). Thus, we will not disturb the trial court's decision to exclude the 2009 forensic interview unless it falls outside the

zone of reasonable disagreement. *Delapaz v. State*, 228 S.W.3d 183, 201 (Tex. App.—Dallas 2007, pet. ref'd).

There is no constitutional right to present favorable evidence. *See Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). A defendant's right to present relevant evidence is subject to reasonable restrictions so long as the rules are not arbitrary or disproportionate to the purposes they are designed to serve. *United States v. Scheffer*, 523 U.S. 303, 316 (1998). The exclusion of evidence can be unconstitutionally arbitrary or disproportionate only where it infringes on a weighty interest of the accused. *Id*. Courts are still free to apply evidentiary rules that are not arbitrary and unjustified. *Potier*, 68 S.W.3d at 662. The exclusion must significantly undermine fundamental elements of the accused's defense. *Id*. at 666. The fact that a defendant was unable to present his case to the extent and in the form he desired does not rise to the level of constitutional error if he was not prevented from presenting the substance of his defense to the jury. *Id*.

Prior to trial, the defense filed motions seeking to admit the video from a forensic interview of the victim at the Collin County CAC in 2009, when she was in the fourth grade—approximately six years before the outcry that led to appellant's indictment in this case. According to testimony at trial, the victim made a statement to a classmate about sexual abuse. When a teacher asked the victim about the statement, the victim became very upset and started to cry, shake, and raise the tone of her voice. The victim was asked if there was anything she wanted to talk about and, still quite upset, she said, "No." The victim was given time to calm down before she was eventually taken to the CAC for a forensic interview. During this interview, which was recorded, the victim denied that any abuse had taken place.

The defense offered the video of the 2009 forensic interview during a hearing held out of the jury's presence, and the State objected that it was hearsay. The defense argued both that the

video was admissible under the business records exception to the hearsay rule, and that the defense had the right to present a defense that overrode the hearsay rule or other rules of evidence because the proffered evidence was essential to a fair trial. In support of this argument defense counsel claimed the video directly contradicted testimony that had been heard in court, arguing in part:

> In that video, multiple questions are asked that are very specific such as where—where does your dad sleep? Where do you sleep? Does he come in your room at night? Has he ever come in your room at night? Has—do you know what a good touch is? Do you know what a—do you know what a hurtful touch is? Do you know what a—what a private touch is?
>
> And in that video, [the victim] indicates that she does understand what all of those things are, she understands what a private touch is, and she's able to articulate that, which is an issue that I think that we're coming up against here which is that some children don't know that they are not supposed to be touched in that manner or in those places.
>
> \* \* \* \*
>
> The—so the testimony that we've heard indicates—there are a lot of different parts to this. But what I was saying just now is that we've gotten from the witnesses—and we haven't talked to [the victim] yet. But we've gotten from these witnesses that a child who's ten years old may not know whether—whether a touch was something that—that was wrong, whether it was a private touch. That they wouldn't necessarily know whether that is something that they should report to an adult or someone that they trust. That video contradicts that assertion.

He also argued that the victim denied any abuse during the forensic interview even though "there was a lot of abuse going on before that video," and that although witnesses testified that the victim was upset, shaking, and crying shortly before the 2009 forensic interview, she showed "a very, very different side" during the interview.

The trial court ruled that the video from the 2009 forensic interview would not be allowed into evidence,[1] stating that "those are all things that you're entitled to get into with those witnesses, but not with the publication of an entire video that's nothing but hearsay." The court also noted

---

[1] Although the court "overruled" the objection, the context of the court's ruling makes it clear the court was actually ruling that the video would not be allowed into evidence.

that it was the defense that had elicited the information that not all ten-year-olds fully understood private touches, and that the defense was attempting through questions it had asked to "create a situation to try to open the door." The trial court did not think there was "any exception to let this forensic interview tape in," although appellant could potentially use the video for impeachment purposes.

Appellant argues that his constitutional rights were violated because the jury was deprived of the ability to view the victim's demeanor during the first forensic interview. He also argues the video supported his defensive theory of fabrication, and that its exclusion was a constitutional violation. "Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Potier*, 68 S.W.3d at 663. There are, however, two distinct scenarios where excluding evidence might rise to the level of a constitutional violation: (1) a state evidentiary rule that categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence that is vital to his defense; and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that forms such a vital portion of the case that its exclusion effectively precluded the defendant from presenting a defense. *See Stevens v. State*, 234 S.W.3d 748, 785 (Tex. App.—Fort Worth 2007, no pet.). Appellant does not argue that an evidentiary rule categorically or arbitrarily prohibited him from presenting a defense. Hence, no constitutional violation occurred unless the trial court erroneously applied the rules of evidence, thereby leading to the exclusion of otherwise admissible evidence, such that it effectively precluded appellant from presenting his defensive theory. *See id.*

It is well-known that forensic interviews contain hearsay. *See, e.g., Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.). Hearsay statements are generally inadmissible unless they fall within a recognized exception to the hearsay rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). The trial court found that the 2009 forensic video

contained inadmissible hearsay. In sustaining the State's hearsay objection and not allowing the video into evidence, the court ruled that the video did not fall under a recognized exception to the hearsay rule. But appellant does not contend the video should have been admitted under the business records or any other exception to the hearsay rule. Indeed, he does not argue the trial court misapplied the rules of evidence or that it erroneously excluded otherwise admissible evidence. Appellant argues that "[t]he evidence of [the victim's] demeanor of the 2009 interview within the context of the entire trial creates reasonable doubt that would not otherwise exist." During oral argument, however, appellant's counsel admitted he could not find a case supporting admission of a video like the one in this case solely on the basis of the victim's demeanor, and our own research has not found such a case. We conclude the trial court did not abuse its discretion in excluding the video of the 2009 forensic interview.

Additionally, even if we assume the trial court erred by excluding the video, that error did not harm appellant because the record shows he was able to present the substance of his defense that the victim fabricated her claims of abuse, including evidence of the victim's demeanor shortly before and during the 2009 forensic interview. *See* TEX. R. APP. P. 44.2(b). In addition to the evidence we have already mentioned, the victim testified that, although appellant had already been abusing her by that point, she denied the abuse in the 2009 interview because she did not know how to talk about it at that time. The jury also heard the victim testify that she was calm during that first forensic interview and the only time she got upset was when she talked about her mother. The fact that a defendant is "'unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.'" *Potier*, 68 S.W.3d at 666 (quoting *United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir. 1991)). Because appellant presented the substance of his defense, any error in excluding the 2009 forensic video did not amount to the denial of a constitutional right. *See Ray v. State*,

–10–

178 S.W.3d 833, 836 (Tex. Crim. App. 2005) ("[B]ecause appellant was permitted to testify about her defensive theory, we cannot say that the exclusion of [the witness's] testimony effectively prevented her from presenting her defense."); *see also Walters*, 247 S.W.3d at 222 ("Appellant fully presented his self-defense theory when he testified," and "the erroneously excluded evidence was relevant to appellant's self-defense theory, but its exclusion did not prevent him from presenting a defense."). We overrule appellant's first issue.

## II. Testimony of Janeth Peterson

In his second issue, appellant argues the trial court erred in allowing hearsay testimony from the outcry witness Janeth Peterson, who appellant argues was not the proper outcry witness.

After Baxter testified, but before Peterson testified in front of the jury, the trial court held a hearing outside the presence of the jury, and the State proffered Peterson as the outcry witness. Appellant objected to Peterson testifying to the victim's "oral sex" and "random touching" allegations, arguing that the proper outcry witness—Baxter, the CPS investigator—had already testified. The State responded that the victim did not give Baxter enough details to describe an offense. The trial court ruled that the victim did not disclose enough details to Baxter to describe a specific offense of sexual assault, but the court granted appellant a running objection "as to all testimony regarding oral sex performed on [the victim] that is offered through Janeth Peterson."

We review the trial court's outcry witness designation for an abuse of discretion. *See Garcia v. State*, 792 S.W.2d 88, 91–92 (Tex. Crim. App. 1990); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd). Trial courts have broad discretion when deciding which witnesses qualify as outcry witnesses. *See Sims*, 12 S.W.3d at 500.

Article 38.072 governs the admissibility of outcry testimony and applies to out-of-court statements that (1) describe the alleged offense; (2) are made by the child; and (3) are made to the

–11–

first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(a); *Bays v. State*, 396 S.W.3d 580, 585 n. 1 (Tex. Crim. App. 2013). To be a proper outcry statement, the child's statement must describe the alleged offense in some discernable manner and must be more than a general allusion to sexual abuse. *See Garcia*, 792 S.W.2d at 91; *Rodgers*, 442 S.W.3d at 552; *Sims*, 12 S.W.3d at 500. If the State presents evidence that a person is a proper outcry witness, the burden to rebut this evidence shifts to the defendant. *See Garcia*, 792 S.W.2d at 91–92; *Eldred v. State*, 431 S.W.3d 177, 184 (Tex. App.—Texarkana 2014, pet. ref'd).

In this case, the record supports the trial court's implicit ruling that Peterson was the first person to whom the victim first disclosed discernable details of the offense of aggravated sexual assault of a child. Among other things, the victim told Peterson that appellant put his mouth and tongue on her vagina at her house when she was about six years of age, and that it felt "weird." On the other hand, the victim never explained to Baxter her understanding of the term "oral sex," and she did not describe any contact between specific body parts. Thus, the trial court could have concluded the victim's statement to Baxter that appellant performed oral sex on her was only an allusion that some type of sexual abuse had occurred. *See, e.g., Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd) (statement by child victim that defendant had been performing oral sex on him for about a year "was nothing more than a general allusion that something in the area of sexual abuse was occurring and not a clear description of the offense charged as required by article 38.072."); *Sims*, 12 S.W.3d at 500 (mother not proper outcry witness because child-victim's statement that defendant "had touched her private parts" only alluded to abuse); *Josey v. State*, 97 S.W.3d 687, 692–93 (Tex. App.—Texarkana 2003, no pet.) (child-victim's statement that defendant "fingered" him only alluded to digital penetration when the child-victim did not explain what the term "fingered" meant or give further details of the assault);

*Gutierrez v. State*, No. 05–17–00772–CR, 2018 WL 2001614, at \*5 (Tex. App.—Dallas April 30, 2018, no pet.) (mem. op., not designated for publication) (child-victim's statement that defendant had done "bad things" to her and that she thought she was pregnant was a general allusion that sexual abuse was occurring).

It is true, as another court has pointed out, that "[t]he proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense." *Robinett v. State*, 383 S.W.3d 758, 761–62 (Tex. App.—Amarillo 2012, no pet.). However, in *Robinett*, which is cited by appellant, the case involved allegations of acts committed against four girls. *Id.* at 759. The Amarillo Court found that although the children's mothers may have been the proper outcry witnesses for any allegations that involved the defendant "touching their privates," the trial court did not abuse its discretion in finding the forensic interviewer was the proper outcry witness because she was the first person to whom each child provided discernible details about the offense the defendant was on trial for—i.e., "oral-penile contact." *Id.* at 762. As the *Robinett* court noted, it is possible to have more than one proper outcry witness, so long as the outcries concern different events and are not simply a "repetition of the same event told to different individuals." *See id.*; *see also Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ("There may be only one outcry witness per event."); *Brown v. State*, 189 S.W.3d 382, 387 (Tex. App.—Texarkana 2006, pet. ref'd). In the present case, the victim did not describe the offense in a discernable manner to Baxter, and appellant's complaint is that Baxter and Peterson testified to the same event. Therefore, *Robinett* is inapplicable. We conclude the trial court did not abuse its discretion in overruling appellant's objection to Peterson's testimony, and we overrule appellant's second issue.

### III. Testimony of Dan Powers

In his third issue, appellant contends the trial court erred in allowing the rebuttal testimony

of Dan Powers.  Appellant argues that Powers's testimony violated rule 403 because the probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or the needless presentation of cumulative evidence.  *See* TEX. R. EVID. 403.

Before Powers testified in front of the jury, the trial court held a hearing out of the jury's presence pursuant to rule 705(b) of the Texas Rules of Evidence.[2]  During this hearing, Powers testified that he has bachelor's and master's degrees in social work.  Powers is a licensed clinical social worker and licensed sex offender treatment provider.  Prior to being promoted to chief operating officer, he supervised the clinical program at the CAC for children and families who have experienced abuse.  He has testified many times before regarding the characteristics for and treatment of children who have experienced abuse, and the characteristics of sex offenders.  The State's proffer of Powers's testimony included the behavioral characteristics of children who have been sexually abused; the signs and symptoms one might see from children who have been abused; why outcries or delayed outcries might occur; and the characteristics one might see in a sex offender.  Powers also noted that sexually abused children have issues regarding trust and building relationships with other people.  They may experience depression or anxiety, and a common characteristic of children who have experienced sexual abuse is self-blame.  And the shame victims of sexual abuse tend to feel can impact relationships, education, and sometimes health.  Sexual abuse is a trauma that could affect every aspect of a child's life.  At the conclusion of the hearing, the defense objected to "additional testimony about the process of disclosure" because "[w]e've already had testimony about that from the State.  At this point, it's just bolstering.  They're repeating the same testimony."  The trial court overruled the objection.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.

---

[2] Rule 705(b) states: "Before an expert states an opinion or discloses the underlying facts or data, an adverse party in a civil case may—or in a criminal case must—be permitted to examine the expert about the underlying facts or data.  This examination must take place outside the jury's hearing." TEX. R. EVID. 705(b).

*Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion if its decision falls outside the zone of reasonable disagreement. *Id*. at 83.

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *See Henley*, 493 S.W.3d at 102; *Hernandez*, 390 S.W.3d at 323. A proper rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *See Henley*, 493 S.W.3d at 102. Also, under a proper rule 403 analysis, an appellate court considers whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See Henley*, 493 S.W.3d at 102 (discussing *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)).

All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). "Rule 403 does not exclude all prejudicial evidence, only evidence that is unfairly prejudicial." *Henley*, 493 S.W.3d at 102 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). "Unfair prejudice" refers only to relevant evidence's tendency to tempt the jury into reaching a decision on grounds apart from the proof presented in support of the claim. *See Henley*, 493 S.W.3d at 102; *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). If the evidence relates directly to elements of a particular claim, it may be prejudicial, but not unfairly so. *See Henley*, 493 S.W.3d at 102; *Manning*, 114 S.W.3d at 928. Furthermore, absent an explicit refusal to conduct the rule 403 balancing test, we presume

the trial court conducted the test when it overruled a rule 403 objection. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

Appellant argues that Powers's testimony "confused the issues" when he testified about the definition of a delayed outcry and the disclosure process. Powers further testified that most children do not report the abuse immediately. Appellant argues that Powers "essentially offered the same testimony of Janeth Peterson, who also testified regarding the process of disclosure."

The trial court could have concluded that Powers's testimony was probative of contested issues in the case. Appellant's defensive theory was that the victim fabricated the allegations, which meant the victim's credibility was at issue. This was highlighted by the defense's attempts to call attention to the fact that the victim denied any abuse during the 2009 forensic interview. Moreover, as we noted earlier, the defense's expert witness, Dr. Gottlieb, testified that a high percentage of children will disclose abuse when directly asked. Thus, Powers's testimony that most children do not outcry right away and that a child may deny sexual abuse and outcry at a later date could have served to rebut Dr. Gottlieb's testimony and aid the jury in concluding the victim's testimony was more plausible. Accordingly, the probative value of Powers's testimony and the State's need for it both weighed in favor of its admission. As for the potential to impress the jury in some irrational yet indelible way, Powers's testimony was not so inherently inflammatory as to elicit an emotional response or arouse the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. Nor does appellant direct our attention to any particular facts about the testimony that would have shown it to be uniquely or unfairly prejudicial. Likewise, there was a low probability of confusion or distraction of the jury from main issues in the case because the testimony concerned only one contested issue pertaining to the charged offense—the victim's credibility. Also, Powers's testimony was not scientific or technical in nature and it pertained to matters that could have been easily understood by a jury. The jury likely

did not give undue weight to the testimony as a result of not being equipped to evaluate its probative force. Moreover, the State did not spend an inordinate amount of time developing the complained-of testimony, which encompassed approximately three pages of the reporter's record.[3]

As for the suggestion that Powers's testimony was cumulative, Peterson and Powers testified about delayed outcries but they did so from different perspectives. Peterson testified from the standpoint of a forensic interviewer; Powers testified from the perspective of a counselor who had treated child sexual assault victims. Moreover, only a small part of their testimony overlapped and each witness testified to information the other did not. Therefore, despite similarities in their testimony on delayed outcries, their overall testimony was not needlessly cumulative.

Based on this record, we conclude the trial court did not abuse its discretion in overruling appellant's rule 403 objection and admitting the evidence in question. *See Hayes v. State*, No. 05–16–00740–CR, 2017 WL 5663612, at *9–10 (Tex. App.—Dallas Nov. 27, 2017, no pet.) (mem op., not designated for publication) (upholding trial court's admission of lay-witness testimony regarding a child-victim's disclosure of sexual abuse to a peer under a rule 403 analysis). We overrule appellant's third issue.

### IV. Sufficiency of the Evidence

In his fourth issue, appellant argues the evidence is insufficient to support the convictions for continuous sexual abuse of a child under the age of fourteen and aggravated sexual assault of a child.

In determining whether the evidence is insufficient to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a factfinder could have found the essential elements of the charged offense was proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

---

[3] Powers's entire rebuttal testimony, including direct and cross-examination, takes up approximately twenty pages of the reporter's record.

319 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). The factfinder must resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319). We presume the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the factfinder's evaluation of the credibility and weight of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Appellant was indicted for continuous sexual abuse of a child under the age of fourteen (count I) and aggravated sexual assault of a child (count II). *See* TEX. PENAL CODE ANN. §§ 21.02, 22.021. Regarding count I, the alleged acts of sexual abuse were aggravated sexual assault of a child younger than fourteen and indecency with a child by contact. *See id*. §§ 21.02(c)(2), 21.02(c)(4). The indictment alleged appellant intentionally and knowingly committed aggravated sexual assault of a child by causing (1) the victim's female sexual organ to contact appellant's male sexual organ; (2) the victim's anus to contact appellant's male sexual organ; (3) the mouth of the victim to contact appellant's male sexual organ; (4) the victim's female sexual organ to contact appellant's mouth; and (5) the penetration of the victim's female sexual organ with appellant's finger. *See id*. §§ 22.021(a)(1). Appellant was alleged to have intentionally and knowingly committed indecency with a child by contact, according to the indictment, by touching part of the victim's genitals with part of his hand and causing part of the victim's hand to touch part of appellant's genitals. *See id*. §§ 21.11(a)(1), (c). The indictment also alleged that each of the aforementioned acts of sexual abuse were committed on more than one occasion and, at the time the acts of sexual abuse were committed, appellant was seventeen years of age or older and the victim was a child younger than fourteen. Count II of the indictment alleged that appellant intentionally and knowingly caused the female sexual organ of the victim (a child then younger

–18–

than fourteen years of age) to contact appellant's mouth.

The State must prove the accused acted with the requisite criminal intent. *Crow v. State*, No. 05–16–01434–CR, 2018 WL 271803, at *3 (Tex. App.—Dallas Jan. 3, 2018, no pet.) (mem. op., not designated for publication). Direct evidence of the required mental state, however, is not required. *Id.* A jury may infer intent or knowledge from any facts that tend to prove its existence, including the defendant's acts, words, conduct, and method of committing the crime. *Id.* We also note that child victims are not required to be specific about the dates the abuse occurred. *See Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006); *Vazquez v. State*, Nos. 05–12–00548–CR, 05–12–00549–CR, 2013 WL 5614300, at *5 (Tex. App.—Dallas Oct. 14, 2013, no pet.) (mem. op., not designated for publication). It is not often that a child knows, even within a few days, the date she was sexually assaulted. *See Sledge v. State*, 953 S.W.2d 253, 256 n. 8 (Tex. Crim. App. 1997).

Appellant argues the evidence is insufficient to prove he acted with a "conscious objective or desire to cause the sexual assault" of the victim and that, when looking at all of the evidence, "one must include the significance of the initial denial of sexual abuse by [the victim] . . . in 2009." He also suggests the victim's testimony that he touched his tongue to her vagina was too general to sustain a conviction. Regarding count one, appellant contends the evidence is insufficient to convict him of continuous sexual abuse of a child because "there was no corroborating or DNA evidence that [a]ppellant committed the sexual assaults stated by [the victim]. There was only the testimony of [the victim] to attempt to show [appellant] was guilty beyond a reasonable doubt."

The child victim's testimony alone is sufficient to support a conviction for continuous sexual abuse of a child or aggravated sexual assault of a child. *See, e.g., Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.) (continuous sexual abuse); *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.) (aggravated sexual assault); *see also Jones*

*v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (indecency with a child). Also, a child victim's outcry statement alone can sustain the conviction. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See Robinson v. State*, No. 05–09–01329, 2011 WL 168736, at \*4 (Tex. App.—Dallas Jan. 20, 2011, no pet.) (mem. op., not designated for publication). In addition, appellant points out that he was not able to admit the 2009 forensic interview into evidence, but courts reviewing the sufficiency of the evidence do not focus on evidence that was not admitted at trial. *See Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015) (court of appeals erred by focusing its analysis on evidence that was not admitted at trial).

As we summarized earlier, the victim described multiple instances of sexual abuse by appellant that occurred over an extended period of time. For example, the jury heard the victim testify that, when she was six years old, appellant pulled down her pants and put his mouth and tongue on her vagina. When he was finished, appellant put his penis in the victim's face and told her, "Okay. Now you do me." The victim refused and appellant said, "Your mother would do it." The victim told Peterson that appellant put his mouth and tongue on her vagina, licked her vagina with his tongue, and that it felt "weird." The victim testified that the abuse she recounted took place over a period of time that was longer than thirty days. She testified that she was first abused by appellant when she was six years old, and the last incident occurred when she was thirteen. Appellant does not cite to us any specific facts supporting his contention that the victim's testimony was too broad or general to sustain the conviction, and we are not free to simply reweigh evidence and substitute our judgments for weight and credibility determinations that were made by the jury. Appellant also points out that the victim denied any abuse took place in the 2009 forensic interview, he "denied each and every allegation from the witness stand," and the victim's

testimony "was inconsistent regarding the instances she described." But these were weight and credibility issues that the jury resolved in the State's favor, as it was entitled to do. Based on the victim's testimony and the other evidence in this record, there was sufficient evidence for the jury to convict appellant of continuous sexual abuse of a child and aggravated sexual assault of a child. We overrule appellant's fourth issue.

We affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. 47.2(b)
171427F.U05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHARLES RAY GRAY, Appellant

No. 05-17-01427-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-82047-2015.
Opinion delivered by Justice Myers.
Justices Evans and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of December, 2018.