**Robert Gene JOSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–02–00023–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 10, 2002.

Decided Jan. 8, 2003.

---

John Hendrik, Duncanville, for appellant.

William (Bill) Hill Jr., Dallas County District Attorney, Patricia Poppoff Noble, Assistant District Attorney, Dallas, for appellee.

Before MORRISS, C.J., ROSS and
GRANT *, JJ.

OPINION

Opinion by Chief Justice MORRISS.

Robert Gene Josey appeals his conviction and life sentence for aggravated sexual assault of a child under fourteen years of age.[1] *See* TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2003). Josey presents five points of error in the instant case: (1) the trial court erred by permitting witnesses not listed in the State's pretrial outcry notice to testify about the victim's outcry statements, (2) the trial court erred by permitting the forensic interviewer to testify as an outcry witness, (3) the trial court erred by permitting more than one witness to testify to the same outcry of oral contact, (4) Josey's trial counsel provided ineffective assistance by opening the door to additional harmful outcry testimony, and (5) the trial court erred by admitting hearsay into evidence over trial counsel's objection. For the reasons set forth below, we affirm the judgment.

**A. Factual Background.**

During spring break of 2001, the victim, age nine, went to visit his step-grandfather, Josey. When the victim returned home on Sunday, March 17, 2001, he told his mother there was something he had to tell her, but he was afraid she would be angry. The victim explained that Josey

made the victim put Josey's penis in the victim's mouth. The victim was also told to put his penis in Josey's mouth and in the mouth of the victim's stepbrother.[2] The victim further informed his mother that Josey "fingered" the victim, but the victim did not explain what this term meant or give further details of the assault. It was not until meeting with Lori Langston, a forensic interviewer with the Dallas Child Advocacy Center, that the victim explained what he meant by being "fingered."

The victim met with Langston at her Dallas office on Tuesday, March 19, 2001. The victim explained, in graphic detail, that Josey had "fingered" the victim by inserting his finger inside the victim's anus. The victim also explained that he had been ordered to insert his finger into Josey's anus. During the interview, the victim further discussed various acts of oral sex and masturbation involving Josey, the victim, and the victim's stepbrother.

The trial court ruled that the victim's mother was the outcry witness for the acts of oral sex and that Langston was the outcry witness for the digital penetration. The trial court believed that, although the mother may have inferred what the child meant by being "fingered," the child's lack of explanation at the time of its first reference would be insufficient for an ordinary citizen or juror to comprehend the term's meaning.

---

* Ben Z. Grant, Justice, Retired, Sitting by Assignment.

1. Josey was charged with aggravated sexual assault in three separate cases involving two different victims. The jury heard all three cases simultaneously, convicting Josey in two and acquitting him in one. The indictment in this case alleged the aggravated sexual assault of a child under the age of fourteen years by digital penetration. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B) (Vernon Supp.2003). Jo-

sey's other conviction is for oral contact with the same victim and is also before this Court in a separate appeal styled *Josey v. State*, No. 06–02–00024–CR, 2003 WL 44713 (Tex. App.—Texarkana Jan. 8, 2003).

2. There is nothing in the record to suggest Josey was charged, tried, or convicted for sexual performance of a child. *See* TEX. PEN. CODE ANN. § 43.25 (Vernon Supp.2003).

## B. Article 38.072 Excepts Outcries from the Hearsay Rule.

Hearsay is not admissible except as provided by statute or by the rules of evidence. TEX.R. EVID. 802; *Long v. State*, 800 S.W.2d 545, 547 (Tex.Crim.App.1990). Article 38.072 of the Texas Code of Criminal Procedure creates an exception to the hearsay rule for statements of child abuse victims if all the requisite conditions are met. *Dorado v. State*, 843 S.W.2d 37, 38 (Tex.Crim.App.1992). Article 38.072 provides that, in sexual offense cases committed against a child twelve years of age or younger, statements that were made by the alleged child victim to the first person, eighteen years of age or older, other than the defendant, about the offense will not be inadmissible because of the hearsay rule. TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.2003). In order for this hearsay exception to apply to such a statement, on or before the fourteenth day before the proceedings begin, the party intending to offer the statement must notify the adverse party of its intention to do so, and must provide the adverse party with the name of the witness through whom it intends to offer the statement and also provide a written summary of the statement. *Id.* Also, the trial court must find, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement. *Id.* Additionally, the child must testify or be available to testify at the proceeding in court or in any other manner provided by law. *Id.* The trial court has broad discretion to determine whether the child's statement falls within the hearsay exception. The exercise of that discretion will not be disturbed unless the record shows a clear abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.-Dallas 2002, pet. ref'd). Stated dif-

ferently, we will not reverse on appeal unless the trial court's decision is outside the zone of reasonable disagreement. *Weatherred,* 15 S.W.3d at 542; *Tear,* 74 S.W.3d at 558.

## C. Outcry Witnesses Not Listed in State's Pretrial Notice.

In his first point of error, Josey contends the trial court erred by permitting both the victim's mother and the forensic interviewer to testify as outcry witnesses when neither was listed in the State's pretrial outcry notice. Josey also believes the trial court erred by allowing Detective Debbie Rule–Graham to testify about the victim's outcry statements to Langston, which Rule–Graham witnessed from behind a one-way mirror adjacent to the child interview room at the Dallas Child Advocacy Center. However, Josey did not raise this issue of lack of proper outcry notice of any witnesses before the trial court, and it is therefore not preserved for review. TEX.R.APP. P. 33.1(a); *Rosas v. State,* 76 S.W.3d 771, 776–77 (Tex. App.-Houston [1st Dist.] 2002, no pet. h.). We overrule Josey's first point of error.

## D. Permitting Langston to Testify as an Outcry Witness.

In his second point of error, Josey contends the trial court erred by permitting Langston to testify as a witness to the digital penetration outcry. The State responds that the trial court correctly ruled Langston could testify about the digital penetration because the victim had only alluded to the act during his statement to his mother. The trial court allowed Langston to testify only about the victim's outcry of digital penetration. The parties had previously agreed the victim's mother was the proper outcry witness for the act of oral contact.

■ "To qualify as a proper outcry statement, the child must have described the alleged offense in some discernible way and must have more than generally insinuated that sexual abuse occurred." *Tear,* 74 S.W.3d at 559 (citing *Sims v. State,* 12 S.W.3d 499, 500 (Tex.App.-Dallas 1999, pet. ref'd)); *see also Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App.1990) (outcry must be more than general allusion of sexual abuse). Multiple outcry witnesses can testify about separate instances of abuse committed by the defendant if each witness is the first person to whom the child victim relayed information about the separate incidents. *Tear,* 74 S.W.3d at 559. "If the child victim first described one type of abuse to one outcry witness, and first described a different type of abuse to a second outcry witness, the second witness could testify about the different issue of abuse." *Id.* (citing *Turner v. State,* 924 S.W.2d 180, 183 (Tex.App.-Eastland 1996, pet. ref'd) (police officer could testify about victim's outcry about penile penetration because victim's previous outcry to counselor was about digital penetration)).

In this case, the victim told his mother on Sunday, March 17, 2001, about being made to put Josey's penis in the victim's mouth and about being "fingered." The victim went into explicit detail with his mother about the act of oral contact. He described to his mother where the two were located when the incident happened, the appearance of Josey's penis, what words Josey said during the act, and how the victim felt as a result of the sexual assault. In contrast, the victim gave no details about being "fingered." He did not explain what the term meant, what action(s) occurred to constitute being "fingered," where the incident occurred, or how the victim felt during or after that particular act.

The evidence presented at trial shows the victim first provided details about the fingering incident on Tuesday, March 19, 2001, during Langston's interview. Before that moment, the victim had only made a general allusion or insinuation that a second sexual assault—digital penetration— had occurred. The victim's mother did not ask what the child meant by the term, and the child offered no details. Thus, the trial court properly concluded that the victim's first outcry regarding digital penetration did not occur until Tuesday, March 19, when the child came forth with more than a general insinuation of sexual abuse regarding digital penetration. *Cf. Schuster v. State,* 852 S.W.2d 766, 768 (Tex.App.-Fort Worth 1993, pet. ref'd) (trial court reasonably determined victim's statement to mother, that defendant had touched victim, was merely general allusion that something in area of child abuse was going on rather than clear description of offense; witness other than mother was proper outcry witness). The trial court did not abuse its discretion, as its ruling on the outcry testimony of Langston is within the zone of reasonable disagreement. We overrule Josey's second point of error.

## E. Permitting Multiple Outcry Witnesses to Testify.

■ In his third point of error, Josey contends the trial court erred by permitting multiple witnesses to testify about the same outcry of oral contact. At trial, the lower court initially limited Langston's testimony to the outcry of digital penetration. The victim's mother would be permitted to testify as the outcry witness for the oral contact.

The victim testified first in the State's case in chief. The victim's stepbrother testified second. Langston testified third, with the victim's mother slated to testify

fourth. During Josey's cross-examination of Langston, the following occurred:

Q: Okay. And through your interviews or your interview, you came to find out that there was only one night that [the victim] spent the night there, I guess?

A: My understanding, and this is a little confusing to me, but that [the victim] visited that home and that there—I believed that there was more than one night [the victim] spent the night there.

Q: Okay. And that he was—you don't know whether that's true or not? If another witness were to come and testify that [the victim] only spent the night one time, that would—

[PROSECUTOR]: Your Honor, I'm going to object to that question.

COURT: For—

[PROSECUTOR]: Speculation, comparative testimony.

COURT: Sustained. Rephrase the question.

Q: You don't know whether it was one night or five or ten or—

A: I don't know the exact number of nights.

Q: Okay. And through your interview did you learn—*obviously, he told you it happened more than once,* correct?

A: What incident are you referring to?

Q: *How many incidents were there,* did he tell you?

A: What I just testified about. We—I was talking about one incident with him. He gave me information that I just testified to with Mr. Reynie was the one incident that we're referring to, that he talked about with me. That involved—

Q: So there was only one night, is what your testimony is?

A: That involved the incident that I—that happened over a night visit. The incident that I just testified to about anal penetration.

Q: Okay. Pass the witness.

[BY THE PROSECUTOR]:

Q: Now he just asked you about how many incidences [sic][the victim] told you about. Remember that question?

[DEFENSE COUNSEL]: May we approach, Your Honor?

COURT: Denied. Matter has been opened up.

Q: He just asked how many incidences [sic][the victim] told you about, remember that?

A: Yes.

Q: How many incidences [sic] did he tell you about?

A: Several.

Q: Okay. Did he talk to you about oral sex?

A: Yes.

. . . .

Q: What did he tell you about that?

A: That [Josey] was sucking on [the victim's] weiner and that [Josey] would go up and down with his mouth.

(Emphasis added.) Josey's complaint is that the trial court erred first, by permitting Langston to testify about oral contact despite its earlier prohibition against such testimony by Langston, and second, by letting the victim's mother testify regarding the same conduct for which she was the proper outcry witness. The State asserts that either the rule of optional completeness or the invited error doctrine supports the trial court's ruling.

■ If a defendant seeks to introduce evidence of an act, declaration, conversation, writing, or recorded statement the rule of optional completeness allows the State to inquire into the remainder of the

same subject. Tex.R. Evid. 107. The invited error doctrine provides that, when a defendant seeks to offer or present the same evidence to which he or she later objects, the defendant is in no position to complain on appeal. *Thacker v. State*, 889 S.W.2d 380, 396 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (trial court properly allowed prosecutor to ask witness about checks introduced into evidence by defendant).

From the testimony preceding Josey's questions about multiple incidents, it seems Langston was attempting to limit her testimony, per the trial court's pretrial rulings, to the victim's first outcry of digital penetration. Even after repeated questioning about possible other instances of sexual abuse, Langston continued to limit her cross-examination testimony to digital penetration. However, from the interchange during cross-examination, it appears Josey was trying to undermine the credibility of either Langston or the victim by juxtaposing Langston's testimony of a single incident of digital penetration against the victim's testimony that the sexual assaults occurred on many nights.

Before Langston's testimony, Josey had been involved in a pretrial hearing governing the scope of Langston's testimony. Josey had heard the victim testify about several acts of both oral contact and digital penetration. Josey had viewed the videotape of Langston's forensic interview and therefore was aware of the potential scope of Langston's knowledge. And Josey's questions make clear that he was asking Langston to confirm or deny the sexual assaults took place on more than one night. However, Josey admitted during a hearing outside the jury's presence that he had not narrowed the scope of his question to sexual assault by digital penetration, and even after the witness balked at testi-

fying about other nights, Josey continued to seek information about those other incidents without further limiting his inquiry to just digital penetration assaults. Thus, there is evidence supporting the trial court's conclusion that Josey opened the door to Langston's testimony about incidents of sexual abuse beyond the outcry of digital penetration. *Cf. Jenkins v. State*, 948 S.W.2d 769, 776 (Tex.App.-San Antonio 1997, pet. ref'd) (defendant invited error by eliciting complained-of testimony himself). The trial court did not abuse its discretion by ruling Josey opened the door to Langston's testimony on the acts of oral contact. And the admission of the mother's testimony as the outcry witness on the oral contact assault was proper for the reasons previously stated. We overrule Josey's third point of error.

## F. Ineffective Assistance of Counsel.

 In his fourth point of error, Josey contends his trial counsel was ineffective for opening the door to Langston's testimony about oral contact and for not properly objecting to the State's failure to list Langston and the victim's mother as potential outcry witnesses before trial.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on such a claim, an appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced his or her defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex.Crim.App. 1999). To meet this burden, an appellant must prove that his or her attorney's rep-

resentation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his or her attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim. App.2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

 Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *Tong*, 25 S.W.3d at 712. We will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim.App.1979). That another attorney, including appellant's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State*, 997 S.W.2d 695, 704 (Tex.App.-Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

In this case, Josey's trial counsel opened the door to Langston's testimony about oral contact by asking a broadly phrased question concerning sexual assaults that occurred on evenings other than the single night to which she had testified. The victim had already testified the assaults occurred over several nights during the week of spring break 2001. Counsel's inquiry

represents an attempt to undermine the credibility of either the victim, Langston, or both: Langston's testimony regarded digital penetration on a single night per the victim's outcry, yet the victim had testified the assaults occurred on several nights; clearly, Josey's counsel was attempting to illuminate the conflict between the victim's initial outcry and the victim's testimony at trial. We cannot say attempting to discredit one or both of the State's primary witnesses is improper trial strategy or otherwise falls below the level of an objectively reasonable standard of conduct.

 Josey also contends his counsel was ineffective for not objecting to the State's failure to list Langston and the mother as outcry witnesses in the State's pretrial notice.

> "An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct."

*Id.* at 814. In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 441 (Tex.Crim.App.2001). We will not conclude the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Id.*

In this case, the record is silent on why Josey's counsel did not object to Langston's and the mother's outcry testimony based on the State's failure to list them in the pretrial outcry notice. Accordingly, the record before us is insufficient to dis-

cern whether counsel's conduct was the product of reasonable trial strategy. Josey has failed to meet his affirmative burden on the first prong of *Strickland.*

Alternatively, a reasonable hypothesis exists to explain counsel's actions. A close reading of the reporter's record reveals the following facts suggesting Josey's counsel had advance knowledge the State would call Langston and the victim's mother as outcry witnesses: counsel had watched a copy of the Child Advocacy Center interview before trial and therefore knew the extent and limits of Langston's testimony, counsel appeared prepared to cross-examine both the mother and Langston during the pretrial hearing and at trial, and there is no evidence in the record of the defense being surprised by the State's witnesses. Objecting to the written outcry notice might have given the State cause for a continuance of the trial (and therefore extra time to prepare its witnesses or investigate other cases against Josey, including the one for which the jury voted to acquit). Under the circumstances, counsel may have believed the better course of action was not to object but go to trial with the State having no additional time to prepare its cases or the witnesses. Such an approach might constitute a reasonable trial strategy under the circumstances.

Josey has failed to satisfy the first prong of *Strickland.* We overrule his fourth point of error.

**G. Admission of a Third Witness' Testimony about the Victim's Outcry.**

■ In his final point of error, Josey contends the trial court erred by permitting Rule–Graham to testify, over objection, about the outcry of the victim. The State responds the objectionable testimony highlighted Rule–Graham's personal observations, or, alternatively, was not offered for the truth of the matters asserted by the children to Langston. Rule–Graham's testimony about that interview appears on a single page of the seven-volume reporter's record and is as follows:

[BY THE PROSECUTOR]:

Q: Is there anything in particular that stood out in those interviews—that sticks out in your mind?

A: Other than the actual offenses that took place?

[BY THE DEFENDANT]: I object to hearsay, Your Honor.

COURT: Overruled.

A: The two boys were interviewed separately and almost in an embarrassed, a giggly manner when Mr. Josey lifted [the victim] up over him, [the victim's] boxer shorts came down and [the victim] talked about that. And then [the victim's stepbrother], whenever he was being interviewed, kind of giggled, embarrassed, and said they dropped all the way to his knees. That for some reason just stuck out in my mind, as well as whenever [Langston] interview[ed] [the victim] and *he explained that, yes, he was to stick his finger in Mr. Josey's rectum, that [the victim] says, no, I had to stick two.*

Q: So [the victim] is describing where his boxers fell off?

A: Right.

Q: And then [the victim's stepbrother] in a separate interview without [the victim] in the room, it's just [the victim's stepbrother], and he described the incident where [the victim's] boxers fell off?

A: Exactly.

(Emphasis added.)

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Tex.R. Evid. 801(d); *see also Long*, 800 S.W.2d at 547. Unless it falls within an exception created by statute or rule, hearsay is inadmissible. Tex.R. Evid. 802. Contrary to the State's suggestion, Rule–Graham's highlighted testimony is not merely limited to her observations of the victim's demeanor; it also includes the victim's out-of-court statement. The lower court's pretrial ruling makes clear that Rule Graham was not identified as an outcry witness in this case. There is no indication the statement falls within any exception to the hearsay rule. Therefore, the statement is hearsay, and the trial court erred by admitting the statement into evidence. *See Long*, 800 S.W.2d at 548. This conclusion, however, does not end our review; we must analyze the error for harm. Tex.R.App. P. 44.2.

■■■■ The admission of hearsay over proper objection, though error, is nonconstitutional error. *Broderick v. State*, 35 S.W.3d 67, 74 (Tex.App.-Texarkana 2000, pet. ref'd). The reviewing court must deem the error harmless if, after reviewing the entire record, the court is reasonably assured the error did not influence the jury's verdict or had but a slight effect. *Id.*; Tex.R.App. P. 44.2(b). If the same or similar evidence is admitted without objection at another point during the trial, improper admission of the evidence will not constitute reversible error. *Broderick*, 35 S.W.3d at 74.

■■■ Rule–Graham testified to statements the victim made during his interview with Langston, even though she was not designated as an outcry witness and her testimony falls within none of the exceptions to the hearsay rule. However, a videotape of the victim's interview was admitted into evidence and played to the jury. The videotape contained the same victim statements to which Rule–Graham had earlier testified. Josey did not object to the videotape or to playing its contents before the jury. Where testimony is admitted over objection, and the same testimony or testimony to the same effect is thereafter admitted without objection, the objection in the first instance is waived. *Davis v. State*, 516 S.W.2d 157, 162 (Tex. Crim.App.1974); *Beheler v. State*, 3 S.W.3d 182, 187 (Tex.App.-Fort Worth 1999, pet. ref'd). Such is the case here. By failing to object to the testimony contained in the videotape, Josey waived his objection to Rule Graham's inadmissible hearsay testimony regarding the victim's outcry. Additionally, we cannot say after examining the record as a whole that Rule–Graham's hearsay testimony had an effect on Josey's substantial rights or improperly influenced the jury, because that testimony was very brief and the jury had an opportunity to watch the interview for itself. *See* Tex.R.App. P. 44.2(b); *Broderick*, 35 S.W.3d at 74 (improper admission of hearsay is nonconstitutional error reviewed under Rule 44.2(b)). The error, even had it been preserved, would have been harmless. We overrule Josey's final point of error.

The judgment of the trial court is affirmed.