

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00091-CR

_____

RONNIE HALL, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 276th District Court
Morris County, Texas
Trial Court No. 12,130CR

_____

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

After a jury found Ronnie Hall, Jr., guilty of failure to register as a sex offender, Hall was sentenced to life in prison.[1] Hall appeals, maintaining that the State presented insufficient evidence to support the jury's guilty verdict and that the trial court erred when it admitted hearsay testimony. Because (1) sufficient evidence supported the jury's verdict and (2) the introduction of alleged hearsay did not harm Hall, we affirm the judgment of the trial court.

*(1) Sufficient Evidence Supported the Jury's Verdict*

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). In drawing reasonable inferences, the trier of fact "may use common sense and apply common knowledge, observation, and experience gained in

---

[1]The indictment against Hall included two enhancement paragraphs alleging prior felony convictions, that is, the second-degree felony of indecency with a child by sexual contact and the second-degree felony of sexual assault of a child. Hall pled not true to both enhancement paragraphs, but the jury found both to be true. Those enhancements are not at issue in this appeal.

the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). As the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and may believe all, some, or none of the testimony of any witness. *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Under Article 62.055 of the Texas Code of Criminal Procedure, a hypothetically correct jury charge requires a jury to find a person guilty of the charged crime if (1) he was required to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure,[2] and (2) he failed to comply with Article 62.055(a) of the Texas Code of Criminal Procedure, which states, in relevant part,

> If a person, other than a person described by Subsection (j), required to register changes address, the person shall, not later than the later of the seventh day after changing the address or the first date the applicable local law enforcement authority by policy allows the person to report, report in person to the local law

---

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a).

enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.

TEX. CODE CRIM. PROC. ANN. art. 62.055(a).

The State's indictment against Hall alleged that, "because of a reportable conviction for sexual assault, [Hall] intentionally, knowingly, or recklessly failed to . . . report a change in his address by not later than the seventh day after the date on which [he] left the previous residence to wit: 507 Short St." In other words, the law allowed the jury to convict Hall if he failed to report a change of address no later than the seventh day after he vacated the Short Street residence.

At trial, Teresa Michelle Jones, an administrative assistant with the Daingerfield Police Department (the DPD), testified that, as a part of her job duties, she was required to monitor the sex-offender registry in Daingerfield. Jones was responsible for ensuring that sex offenders who lived in that area registered with the State and followed the guidelines set forth by the State.

As a result of an earlier conviction for sexual assault of a child,[3] Hall reported to Jones June 4, 2020. At that time, Jones talked to Hall about his registration duties as an offender.[4] During their conversation, Hall reported to Jones that he was currently residing at 507 Short Street (Short Street) in Daingerfield. Jones specifically informed Hall,

> No later than the seventh day before [you] move to a new residence in this state or another state, [you] must report in person to the law enforcement authority designated as [your] primary registration authority and to any community supervision and corrections department officer, juvenile probation officer, or

---

[3]Hall stipulated that he was previously convicted of sexual assault of a child.

[4]Hall was required to register for the remainder of his life.

4

> parole officer supervising [you] and inform that authority and officer of [your] intended move.  If [your] new residence is located in the state, no later than the seventh day after changing [your] address, [you] must report in person and register with the local law enforcement authority in the municipality or county where [your] new residence is located.

In other words, if Hall intended to move to a different residence, he was required to notify the local law enforcement authority seven days before he moved away from Short Street, and in the event he failed to do that, it would be another violation if, within seven days after he moved from Short Street, he failed to provide his new address to the appropriate authority, which for Hall would be the DPD or Jones.  According to Jones, in the event Hall did not know where his next residence would be located, he was required to "immediately" inform Jones that he had left Short Street, that he did not know where he would be living, but that he would remain in the Daingerfield area.  Jones testified that Hall did not comply with any of those requirements.[5]

In addition, Jones explained that it was the practice of the DPD that she periodically send an officer out to verify registration locations for all sex offenders.  Jones testified, "Typically every other month I send an officer out to just verify that the offender[s] are where they say they are."  In this particular instance, Jones asked DPD Officer Jose Santos[6] to perform a routine address check on Hall at the Short Street address on July 6, 2020.  Santos advised Jones that Hall was no longer at that address.  According to Jones, considering that, on July 6, 2020, Hall was no longer at Short Street, he would have had until July 13, 2020, in which to inform her that he had

---

[5]Hall had initialed and signed the notification of registration duties, indicating that he understood the requirements and that he agreed to comply with them.

[6]At the time of trial, Santos was a trooper with the Texas Department of Public Safety.

a new address or that he had left Short Street but did not know where he would be residing.[7]

Jones stated that, as of July 18, 2020, Hall still had not reported his change of address to her and that she "had no idea where Mr. Hall was at that time." As a result of Hall's failure to comply with his registration requirements, Santos obtained a warrant for his arrest.

Officer Santos testified that, as a part of his duties, he did routine checks to verify the addresses of sex offenders in Daingerfield. On July 6, 2020, Santos performed an address check at Hall's Short Street address to determine whether Hall was still residing there. Santos explained the manner in which he performs an address check, stating,

> I basically would drive by the residence. I will know, make myself known. I would make contact with anybody in the residence, have them know that I was there to make a check, sex offender's check, at that point depending on whether they were there or not. If they were not there, I would come back at a later time.

Santos continued, "[If] I'm unable to make contact with that subject, I would make contact with Ms. Jones and have her know to make contact with him through cell phone or however means she can to have them know they need to make contact with me so I can verify the address." According to Santos, in order to verify an address, he must make physical contact with the subject. When Santos conducted his July 6 verification of Hall's address, he was unable to verify that Hall was still living on Short Street. On July 11, 2020, Santos made a second check of Hall's residence but, again, he was unable to verify that Hall lived on Short Street. According to Santos, as of that time, Hall had not reported a change of address to Jones or DPD. Santos obtained a warrant for Hall's arrest for violating his duty to register as a sex offender. On July

---

[7]On cross-examination, Jones conceded that there did not appear to be a seven-day notification requirement if a defendant did not know where he would be living. On re-direct, Jones explained that, if Hall did not know where he was going to reside, he was required "to immediately tell [her] what his geographical location would be."

6

18, 2020, Santos arrested Hall. As of that date, Hall had not notified DPD of a change of address.

Shantriel Hall, who rented the house at Short Street during the relevant time, testified that Hall had lived in the home until her brother asked him to leave after they had an altercation. At trial, Shantriel indicated that she did not remember when Hall stopped living at Short Street. Yet, before trial, Shantriel made a statement that, in the summer of 2020, she was unsure when Hall had left her house, but she noted that, around July 7, the police came looking for Hall and that "he wasn't there because at that time him and [her] brother had a problem, so [Hall had] left." Shantriel stated that she remembered making that statement and that it was true. According to Shantriel, after her brother asked Hall to leave the residence, he never returned.

Hall testified that he had "got[ten] into it" with Shantriel's brother, and as a result, Shantriel "kicked [him] out." Hall explained, "I don't remember the exact date, but I'm familiar with the sex offender registry rules, so when I got kicked out, I got arrested seven days later, I mean six days later, and I wasn't able to go tell [Jones] I got kicked out." Hall said, "I got the failure to register while I was already in jail. That's why I didn't go to court." According to Hall, after he left Short Street, he had no place to live. Instead, he stayed in the park and "[went] over to this chick's house back and forth." Hall said he also lived on the street for four or five days. Hall testified that he did not intentionally move from Short Street, but that he "just got kicked out." When the State asked Hall when he got "kicked out" of Short Street, Hall said, "I don't know the exact date. I think it was like June or July." After twice repeating that he left Short Street in June or July, Hall said, "It had to be July." He then stated that he remembered

7

being at Short Street on July 4 and that he lived there "[n]ot even two months." Hall eventually stated that he was arrested for a "domestic dispute" six days after he was kicked out of the house. Regardless, Hall conceded that he never returned to live at the Short Street residence. In addition, Hall admitted that he had previously been to prison for the offense of failure to register as a sex offender,[8] but he explained that it was because "[he] was on the run." As a result of that conviction, he was sentenced to seven years in prison. Hall also conceded that he had been to prison on two occasions "for having sex."

Santos's testimony that he unsuccessfully sought Hall at the Short Street address on July 6 and July 11 was not the only evidence. Shantriel affirmed as true her earlier statement that Hall vacated that residence around July 7. Hall himself testified that he left Short Street sometime in June or July, but subsequently insisted that he had been living at that residence on July 4. He eventually testified that he was arrested and incarcerated for another charge six days after he left Short Street. Regardless of whether the jury calculated his departure date as being sometime in the month of June, July 4, July 6, July 7, or July 11, the requisite seven days had passed by the time of Hall's arrest on July 18. And, although Hall testified that he had been arrested before July 18 on another charge, there was no other evidence to support his assertion. Even if there had been, as the trier of fact, the jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Thomas*, 444 S.W.3d at 10. As a result, the jury was free to believe or disbelieve Hall's version of events and his proffered excuses for his failure to comply with the statutory notice requirements.

---

[8]Hall was required to register as a sex offender due to a conviction of indecency with a child younger than seventeen.

8

Hall emphasizes the facts that he had been "kicked out" of Short Street and that he had not left of his own volition. But, the reason behind Hall's departure from Short Street is of little, if any, relevance. Whether he left involuntarily or voluntarily, Hall was still required to notify Jones or the DPD of his new circumstances no later than the seventh day after his departure.

Hall also argues that the State proved only that Hall "was not present" at Short Street on the two dates that Santos briefly visited the residence, but it did not prove that he no longer lived there. Yet, the above evidence was sufficient to show that Hall did, in fact, vacate the Short Street residence on or before July 11, 2020, and to show that he never returned, or intended to return, to live there. Consequently, the jury could have concluded that, for purposes of his statutory notice requirements, Hall no longer lived on Short Street and was not just temporarily unavailable on the dates Santos went to the residence to verify his address.

The State proved Hall's reportable conviction of sexual assault and further proved his failure to notify the appropriate authorities of his change of residence within the statutory time frame. Consequently, the evidence was legally sufficient to support the verdict convicting Hall of the offense for which he was charged.

We overrule this point of error.

*(2)* *The Introduction of Alleged Hearsay Did Not Result in Harm to Hall*

Hall also complains that the trial court erred when it allowed the jury to consider Jones's testimony that Santos told her that, when he visited the Short Street address on July 6 and 11, Hall was no longer living at Short Street. Hall contends that Santos based his statement to Jones

9

on information that he had received from a third party.[9]  Hall maintains that Jones's testimony should have been excluded as hearsay.[10]  The State maintains that, even assuming Jones's testimony was inadmissible hearsay, any error was harmless.[11]  We agree with the State.

We "must deem [an] error harmless if, after reviewing the entire record, [we are] reasonably assured [any] error did not influence the jury's verdict or had but a slight effect." *Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.) (citing TEX. R. APP. P. 44.2(b)).  "If the same or similar evidence is admitted without objection at another point during the trial, improper admission of the evidence will not constitute reversible error." *Id.*  Here, Hall testified repeatedly that he left the Short Street residence sometime in June or July.  He finally settled on sometime around July 4.  Hall also testified that, after his departure, he never again resided at that address.  For purposes of calculating the seven-day reporting requirement, Hall's own testimony—that he left sometime in June or July, or July 4—was more harmful to his case than was Jones's testimony that Hall no longer lived at the residence on July 6 and July 11.  Accordingly, we find that any error in the admission of Jones's testimony was harmless.

We overrule this point of error.

---

[9]Hearsay is defined as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  TEX. R. EVID. 801(d).

[10]After a hearing outside the presence of the jury, the trial court allowed the State to ask the following question:  "So, as of July 6th, 2020, at the initial address check, you were unable to verify Mr. Hall's address at the residence?"  Santos responded, "Correct."

[11]In its brief, the State does not address whether the trial court erred when it admitted the complained-of testimony.  Instead, it argues only that the error was harmless.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:    March 7, 2022
Date Decided:      March 30, 2022

Do Not Publish