

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00115-CR

———————————————————

TRAVIS WADE FRAZIER, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1690859R

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

### I. Introduction

Appellant Travis Frazier appeals his conviction of continuous sexual assault of a child younger than fourteen years of age. On appeal, he raises three points. First, Frazier argues that the trial court erred by denying his motion for new trial after improperly deeming a juror "disabled" because he was not vaccinated for COVID-19 and therefore was required to remain in quarantine for ten days after another juror tested positive. Next, Frazier contends that the trial court abused its discretion by admitting certain expert testimony because it was irrelevant and cumulative and served only to improperly "bolster" previous testimony. Finally, Frazier asserts that the trial court improperly allowed two different outcry witnesses to testify regarding the same outcry statement.

We will affirm.

### II. Background

#### A. Frazier's Family

Frazier and his wife Pam[1] have been married for over thirty-five years. They have two sons, Zane and Art. In August 2018, Zane and his wife Amy lived just down the road from his parents with Amy's daughter Valerie, age seven, Zane's daughter Sophia, age five, and their child together Annie, age one.

---

[1]Aliases consistent with those used in the parties' briefs have been used for the names of the victims and their family members, other than the defendant. *See* Tex. R. App. P. 9.10(a)(3).

Zane, Amy, and their girls were very close to Frazier and Pam, whom the girls called Paw Paw and Nona. Frazier and Pam often hosted family events at their house, and from 2014 to 2018 they regularly babysat Valerie and Sophia on the weekends.

## B. First Indication of Abuse: Sophia's Accidental Disclosure

In March 2018, during a tickle fight with her other grandmother Martha (Amy's step-mother), Sophia pointed to her privates and said, "[T]ickle me there, like Paw Paw does," clarifying that by "Paw Paw" she meant Frazier. Martha told Sophia that no one should ever touch her there except her mother or a doctor. She then asked Valerie if Frazier had ever tickled her there, and Valerie replied that he had not.

Martha told Amy what Sophia had said, and Zane and Amy decided to contact Child Protective Services (CPS). In the interview with CPS, Sophia "clammed up" and did not verify the claim of abuse. As a result, CPS determined that it could not substantiate the claim. Because the abuse was unsubstantiated, Zane and Amy continued to allow the girls to visit Frazier and Pam's house.

## C. Valerie's Outcry

In October 2018, Valerie told her mother Amy that Frazier had been abusing her. Valerie described how Frazier had "show[n] her his privates and ma[de] her play with them . . . with her hands and mouth." Valerie stated that this had been happening since she was in kindergarten, usually while Pam was asleep on the couch. Valerie said that Frazier had warned her not to tell anyone because Nona and her

3

parents would be mad at her. Amy recorded Valerie's account on her phone, and the next day she and Zane reported the abuse to the police.

Alexis Harrison, a forensic interviewer at Alliance for Children, conducted Valerie's forensic interview. Valerie told Harrison that Frazier had asked her to play with his private part and had kept asking until she complied. Valerie told Harrison about additional acts of abuse not previously disclosed to her mother, including Frazier touching Valerie's genitals with his hand, penetrating her vagina with his finger, and performing oral sex on her. Valerie recounted for Harrison many specific details of the abuse, including where it occurred—typically in Frazier's bedroom while Pam was asleep, the positions of Valerie's and Frazier's bodies during the abuse, and the "frosting" Frazier used as lubricant. Valerie also chronicled the timeline of the abuse, telling Harrison that it had started when Valerie was six years old and in the first grade and that the last time it had happened was when she was six years old and in the second grade.

## D. Sophia's Outcry

In March 2019, Sophia revealed to Zane that Frazier had abused her as well. After Zane reported this to the police, Harrison conducted a forensic interview.[2] During the interview, Sophia described many details of the abuse, including that

---

[2]Harrison had previously conducted a forensic interview of Sophia in November 2018, but Sophia disclosed no sexual abuse at that time.

Frazier had touched her private parts on many occasions in his bathroom, that she had put her mouth on his private part, and that he had put his private part on hers.

## E. Factual and Expert Testimony Concerning Abuse

At trial, Amy and Harrison both testified as outcry witnesses for Valerie. Zane and Harrison both testified regarding Sophia's outcry. The sexual assault nurse examiners (SANEs) who examined the girls also testified.

In addition to testifying as a fact witness, Harrison provided expert testimony regarding the dynamics involved when children disclose chronic sexual abuse by a family member. Harrison explained that children who are abused at a young age often experience confusion and conflicting emotions, which, combined with a tendency to see everything as their fault, can cause them to delay reporting the abuse. She also explained that children typically disclose sexual abuse gradually, sometimes engaging in "toe-dipping" in which they reveal just enough to make the abuse stop and then wait to see what happens next. Harrison also described the nature of grooming, the process by which an abuser manipulates not only the victim but also the adults in the victim's life to gain unfettered access to the victim. Finally, Harrison described the nature and goals of a forensic interview, particularly the importance of eliciting sensory and peripheral details,[3] which play a crucial role in evaluating a child's credibility.

---

[3]Sensory details reflect a child's memory of something she saw, heard, felt, smelled, or tasted. Examples of peripheral details include the temperature of the

5

Lindsey Dula, Director of Program Services at Alliance for Children, who had never met Valerie, Sophia, or their parents but reviewed the victims' forensic interviews, testified as an expert witness in the fields of forensic interviewing and child sexual abuse and its effects. While Dula explained some of the same concepts as Harrison such as "toe-dipping" and the importance of sensory and peripheral details, she also highlighted the significance of particular details—such as Valerie's recollection of conversations with Frazier and particular instructions he had given her—in a way that Harrison's testimony had not. Moreover, Dula's testimony also covered areas that Harrison had not addressed at all, such as the difference between a true outcry and an accidental disclosure. She also testified regarding the impact that the three-year delay between the outcries and the trial might have had on these victims' testimony, explaining that children's memories deteriorate over time and that children learn embarrassment as they get older, which can inhibit their ability to speak about past abuse.

## F. Frazier's Defense

Frazier's defense at trial involved attacking the credibility of the victims' accounts. Pam and Art both testified that they believed that Zane and Amy had coached the girls into making up the allegations against Frazier. Art stated that Zane and Amy had gotten into a big argument with his parents shortly before the outcries

room, the whereabouts of other people in the house, or the time of day. As Harrison explained, children who have been coached typically cannot provide sensory or peripheral details.

and that he believed that they were capable of coaching their girls to lie. The defense also suggested that the girls' accounts may have resulted from the girls' having been exposed to pornography or overhearing sexual conversations in their home.

## G. Dismissal of Juror

On Monday, August 2, 2021, shortly before closing arguments were to begin, the trial court learned that one juror—Juror No. 31—had been diagnosed with COVID-19 but was asymptomatic. The trial court contacted the Tarrant County Public Health Department, and the health department conducted rapid COVID-19 tests on all the jurors. The trial court postponed closing arguments until Thursday, August 5, 2021, when Juror No. 31's five-day quarantine period would be complete.

On Thursday, the trial court informed the parties that Juror No. 31 had been medically cleared to continue and that the remaining eleven jurors had tested negative. However, because Juror No. 29 was unvaccinated, under the Tarrant County Public Health Department's guidelines, he was required to remain in quarantine for ten days. As a result, the trial court found Juror No. 29 to be "disabled" for purposes of Article 36.29 of the Texas Code of Criminal Procedure and ordered that the trial continue with the remaining eleven jurors. Frazier objected to proceeding without all twelve jurors[4] and then moved for a mistrial on the grounds that the remaining jurors would rush through their deliberations out of fear of being in contact with someone who

---

[4]Frazier provided no grounds for his objection, stating only that "the Defense would object at moving forward at this point without the presence of the full [twelve] members of the jury."

7

had tested positive for COVID-19. The trial court overruled Frazier's objection, denied his motion for a mistrial, and allowed the trial to continue with the remaining eleven jurors.

## F. Trial Outcome and Appeal

Frazier was convicted of continuous assault of a child younger than fourteen years of age and sentenced to thirty-five years in prison. Frazier timely filed a motion for new trial, which was denied after a hearing. This appeal followed.

## III. Discussion

On appeal, Frazier raises three points. First, Frazier asserts that the trial court erred by denying his motion for new trial after improperly deeming a juror "disabled" because he was not vaccinated for COVID-19. Second, Frazier argues that the trial court abused its discretion by admitting Dula's expert testimony because it was redundant and cumulative of Harrison's and constituted improper "bolstering." Finally, Frazier argues that the trial court erred by allowing the testimony of two different outcry witnesses on the same outcry statement. We will address each of these issues in turn.

## A. Dismissal of Juror No. 29 as "Disabled"

While the right to a twelve-person jury is not found in the United States Constitution, both the Texas constitution and the Texas Code of Criminal Procedure require a verdict rendered by twelve jurors in felony cases. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a). However, under both the constitution and

the statute, if a juror becomes "disabled" from sitting, the judge may remove the juror and allow the trial to proceed with fewer than twelve jurors. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a).

"The determination as to whether a juror is disabled is within the discretion of the trial court. Absent an abuse of that discretion, no reversible error will be found." *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). Our role in reviewing a finding of disability is not "to substitute [our] own judgment for that of the trial court, but rather, to assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable." *Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012) (op. on reh'g). Thus, we will reverse a trial court's finding of disability only if it is outside the zone of reasonable disagreement. *Id.*

The State argues that Frazier failed to preserve the specific claim of error that he makes on appeal—that the trial court abused its discretion by finding Juror No. 29 "disabled" based upon the county health department's order that he remain in quarantine due to his unvaccinated status.[5] Thus, as a threshold matter, we must consider whether Frazier preserved this specific claim of error.

---

[5]In his brief, Frazier notes that the quarantine periods promulgated by the Tarrant County Public Health Department and the federal Centers for Disease Control and Prevention are only suggested, not mandated. However, the trial court stated on the record that Juror No. 29 had been "ordered" to quarantine for ten days. In the absence of any evidence in the record to the contrary, we must defer to the trial court's determination. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)

9

To preserve a complaint for appellate review, the record must show that a specific and timely objection was made to the trial judge and that the judge ruled on the objection. Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Smith v. State*, 256 S.W.3d 341, 343 (Tex. App.—San Antonio 2007, no pet.) (mem. op.). "The complaining party must have informed the trial judge what was wanted and why the party was entitled to it." *Lovill*, 319 S.W.3d at 691. A complaint is not preserved "if the legal basis of the complaint raised on appeal varies from the complaint made at trial." *Id.*

After the trial court found Juror No. 29 to be "disabled," Frazier raised a bare objection to proceeding with eleven jurors, stating no grounds. He then moved for a mistrial on the grounds that the jurors would rush through their deliberations out of fear of COVID-19 exposure.[6] However, at trial Frazier never specifically objected to

---

(acknowledging that appellate courts must defer to a trial court's resolution of historical facts). Moreover, at the time the finding of disability was made, the trial court was operating under directives contained in an emergency order of the Texas Supreme Court to, among other things, take reasonable action to avoid exposing court proceedings and participants to the threat of COVID-19. *See Fortieth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 911, 912 (Tex. 2021) (order). Thus, even assuming that the ten-day quarantine period was not mandatory per se, disregarding the county health department's quarantine guidelines could certainly be viewed as a violation of the supreme court's emergency order.

[6]As the State correctly pointed out in its brief, because Frazier's motion for mistrial was based on his concern that the entire jury would be unable to deliberate out of fear of being exposed to the COVID-19 virus, far from being an objection to the trial court's finding that Juror No. 29 was "disabled," the motion was, in essence, an assertion that *all* of the jurors were "disabled." *See Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (recognizing that for purposes of Article 36.29(a),

10

the trial court's finding that Juror No. 29 was "disabled." Rather, the first time he raised this specific objection was in his motion for new trial. While a motion for new trial may preserve a claim of error if the appellant did not have the opportunity to object at trial, where, as here, the appellant had the opportunity to object—and in fact did so without stating specific grounds—a motion for new trial will not preserve the error. *See Lopez v. State*, 96 S.W.3d 406, 414 (Tex. App.—Austin 2002, pet. ref'd) ("The use of a motion for new trial to preserve error is . . . limited to the rare circumstances . . . when there is no opportunity to object . . . ."). Because Frazier failed to specifically object to the finding of disability at trial, this point does not appear to have been preserved for appellate review.

Even setting aside the preservation issue and assuming without deciding that the claim of error was preserved,[7] we overrule Frazier's first point on the merits. Frazier's claim that the trial court abused its discretion by finding Juror No. 29 to be "disabled" is grounded on the fact that Juror No. 29 was not actually sick. However,

---

"disability" includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror" (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972))). Thus, Frazier's motion for mistrial did not preserve the claim of error regarding Juror No. 29's "disability."

[7]Because we overrule this issue on the merits, we need not decide whether it was preserved. *See, e.g., Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (expressly declining to decide whether an objection was required to preserve error on an issue because it could be overruled on the merits); *Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 n.4 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) ("Because we overrule this point of error on the merits, we do not address whether error was preserved.").

for purposes of Article 36.29(a), "disability" is not limited to physical illness but includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror." *Reyes*, 30 S.W.3d at 411 (quoting *Griffin*, 486 S.W.2d at 951); *see also Edwards v. State*, 981 S.W.2d 359, 366–67 (Tex. App.—Texarkana 1998, no pet.) (affirming trial court's determination that juror's inability to find childcare made her "disabled"); *Freeman v. State*, 838 S.W.2d 772, 774 (Tex. App.—Corpus Christi–Edinburg 1992, pet. ref'd) (affirming trial court's ruling that juror who was so concerned about missing work that he could not be attentive during trial was "disabled"). Indeed, incarceration has been held to be a "disability" for purposes of Article 36.29(a). *See Griffin*, 486 S.W.2d at 951 (affirming the trial court's determination that a juror who had been arrested for driving while intoxicated during noon recess of trial was disabled because he was "in jail, the jury was reassembled after noon recess, and court was about to reconvene"); *Foyt v. State*, 602 S.W.3d 23, 47 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (holding the trial court did not abuse its discretion in finding jailed juror "disabled"). With regard to their ability to perform their jury functions, an incarcerated juror is no different from a juror under a quarantine order—in both cases, while the juror may be willing and physically able to serve, his inability to be present in the courtroom prevents him from "fully and fairly performing the functions of a juror." *Reyes*, 30 S.W.3d at 411. Because Juror No. 29 was unable to be physically present in the courtroom without violating the Tarrant

County Public Health Department's directives, the trial court did not abuse its discretion by declaring him "disabled."

We overrule Frazier's first point.

## B. Dula's Expert Testimony

In his second point, Frazier asserts that the trial court erred by admitting Dula's expert testimony. According to Frazier, Dula's testimony was irrelevant because it was cumulative and redundant of Harrison's and constituted improper "bolstering."

We review a trial court's decision to admit or exclude expert opinion testimony under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007). We review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.*

Pursuant to Rule 401 of the Texas Rules of Evidence, relevant evidence is that which has any tendency to make a fact of consequence to the determination of the case more or less probable than it would be without the evidence. Tex. R. Evid. 401(a)–(b). "In a case involving the sexual abuse of a child, a fact of consequence to the determination of the action includes whether the child was actually abused." *Shaw v. State*, 329 S.W.3d 645, 651 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993)). Expert testimony explaining that a child exhibits behavioral characteristics consistent with those

13

commonly observed among sexually abused children is relevant and admissible. *See Cohn*, 849 S.W.2d at 818; *Shaw*, 329 S.W.3d at 651. However, such testimony would cross the line into improper "bolstering" if the expert directly opined on the child's truthfulness. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *Flores v. State*, 513 S.W.3d 146, 162 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

> Insofar as it survived the codification of the rules of evidence,[8] "bolstering" is
>
> any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

*Cohn*, 849 S.W.2d at 819–20. Thus, evidence is not "bolstering" if it "corroborates another witness'[s] story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency to establish a fact of consequence." *Id.* at 820.

Here, Frazier does not assert that Dula improperly "bolstered" Harrison's or the victims' testimony by directly opining on their truthfulness. Instead, he grounds his "bolstering" claim on his assertion that Dula's testimony was redundant and cumulative of Harrison's. However, while Dula's and Harrison's testimony

---

[8]*See Cohn*, 849 S.W.2d at 821–22 (Campbell, J., concurring) (discussing the history of the "bolstering" objection and expressing the view "that a 'bolstering' objection is no longer adequate to preserve error for review concerning the admission of evidence because no such ground survived the Texas Rules of Criminal Evidence"); *Prestiano v. State*, 581 S.W.3d 935, 945 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (op. on reh'g) ("Whether 'bolstering' remains a valid objection is in doubt.").

14

overlapped to an extent, Dula also addressed topics that Harrison did not, including the difference between a true outcry and an accidental disclosure and the common pattern of behavior in which a child denies abuse during an initial forensic interview following an accidental disclosure and then is later prepared to make a more intentional disclosure. Thus, Dula's testimony was not redundant or cumulative. The mere fact that portions of Dula's testimony corroborated Harrison's or the victims' does not make it inadmissible. *See id.* at 820.

In arguing that Dula's testimony constituted improper "bolstering," Frazier makes much of the fact that Harrison's credibility had not been attacked. However, the Texas Court of Criminal Appeals has made clear that expert testimony concerning common behavior among sexually abused children need not serve a rehabilitative function to be admissible. *See id.* at 819. Moreover, even if this were a requirement, Dula's testimony did in fact serve a rehabilitative function. Frazier's entire defense was predicated on attacking the credibility of the victims' accounts. The defense suggested that the girls had been coached by Zane and Amy to lie or that they had been exposed to pornography or other sexual materials as a result of Zane's pornography addiction or Amy's work as an unlicensed massage therapist. Thus, Dula's testimony explaining that she saw no signs of coaching and highlighting the significance of sensory and peripheral details to specifically refute the defense theory that the girls' accounts were the result of being exposed to pornography helped the jury to better understand the victims' testimony and aided its assessment of their

15

credibility. *See* Tex. R. Evid. 702; *Weatherred*, 15 S.W.3d at 542 (stating that under Rule 702 expert testimony is admissible if it "is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue"); *cf. Roberts v. State*, No. 08-19-00029-CR, 2019 WL 7046756, at *6 (Tex. App.—El Paso Dec. 23, 2019, pet. ref'd) (not designated for publication) (finding expert testimony regarding common behavioral traits of child sexual abuse victims "relevant and helpful to assist the jury in determining the credibility of [the victim's] outcry").

In sum, Dula's testimony did not directly opine on the truthfulness of any other witness, was not redundant of Harrison's, and helped the jury to better understand the victims' testimony and to assess their credibility. Accordingly, the trial court did not abuse its discretion in admitting her testimony.

We overrule Frazier's second point.

## C. Harrison's Testimony as an Outcry Witness

In his third point, Frazier argues that the trial court erred by allowing Harrison to testify as an outcry witness regarding events about which Amy had already testified.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only

16

when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Article 38.072 of the Texas Code of Criminal Procedure creates a statutory exception to the general rule excluding hearsay. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b).

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted). The proper outcry witness is the "first person, 18 years of age or older, other than the defendant, to whom the child or person with a disability made a statement about the offense or extraneous crime, wrong, or act." Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3). The court of criminal appeals has construed the phrase "about the offense" to mean a statement that "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91(Tex. Crim. App. 1990). "[T]he statement must be more than . . . a general allusion" of sexual abuse. *Id.* Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *Id.*; *Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (affirming trial court's determination that stepmother was proper outcry witness

despite victim's prior report of abuse to mother because initial report to mother lacked specificity).

As the statute is event-specific, there may be more than one outcry witness provided that each testifies about different events. *See Brown v. State*, 381 S.W.3d 565, 571 (Tex. App.—Eastland 2012, no pet.); *Hernandez v. State*, No. 02-08-00478-CR, 2010 WL 1854150, at *3 (Tex. App.—Fort Worth May 6, 2010, no pet.) (mem. op., not designated for publication). For example, in *Josey v. State*, the court of appeals held that the trial court did not abuse its discretion by admitting the testimony of a second outcry witness. 97 S.W.3d 687, 693 (Tex. App.—Texarkana 2003, no pet.). The victim first told his mother about being made to have oral contact with the defendant's genitals and about being "fingered." *Id.* While the victim went into explicit detail with his mother about the act of oral contact, he gave no details about being "fingered." *Id.* Two days later, however, the victim provided, for the first time, details about being "fingered" during an interview with a forensic interviewer. *Id.* The court of appeals concluded the victim's first outcry regarding digital penetration did not occur until the interview. *Id.*; *cf. Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding psychologist was proper outcry witness even though complainant told mother first because no details were provided to mother).

Here, Frazier asserts that Valerie's outcries to Amy and Harrison covered the same events. However, Valerie's statements to Harrison described separate instances

of abuse not previously disclosed to Amy. In her initial statement to Amy, Valerie stated that Frazier showed her his private parts on purpose and had her play with them using her hands and mouth and that this had happened continuously since kindergarten. Later, in her forensic interview with Harrison, Valerie described numerous additional acts of abuse, including Frazier touching her genitals with his hand, penetrating her vagina with his finger, and performing oral sex on her. Therefore, as in *Josey*, because Amy and Harrison testified regarding different acts of abuse, the trial court did not abuse its discretion by allowing them both to serve as outcry witnesses. *Josey*, 97 S.W.3d at 693; *see also Hernandez*, 2010 WL 1854150, at *3 (affirming trial court's decision to allow two outcry witnesses to testify where victim's outcry to second witness alleged additional instances of abuse).

We overrule Frazier's third point.

## IV. Conclusion

Having overruled all of Frazier's points, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 6, 2022

19